No. 14336

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

RAY C. MAXWELL,

     Plaintiff, Respondent and Cross-Appellant,

-vs-

G. C. ANDERSON, JR., and CAROLE J.
ANDERSON, husband and wife,

     Defendants and Appellants.

Appeal from: District Court of the Thirteenth Judicial
          District,
          Honorable Jack Shanstrom, Judge presiding.

Counsel of Record:

    For Appellants:

        Ayers and Alterowitz, Red Lodge, Montana
        Michael G. Alterowit argued, Red Lodge, Montana

    For Respondent:

        Meglen, Murray and Bassett, Billings, Montana
        J. F. Meglen argued and Chares A. Murray, Jr.
        argued, Billings, Montana

Submitted: December 19, 1978

Decided: MAR 28 1979

Filed: APR 28 1979

Thomas J. Kearney
                        Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This action involves the foreclosure of a mechanic's lien by respondent Ray C. Maxwell on a house which he contracted to build for appellants Anderson. The District Court, Thirteenth Judicial District, ordered the Andersons to pay Maxwell, the contractor, $15,038.88 on his lien and a total of $9,223.41 to other suppliers who also held liens for materials in the house. In addition, the District Court ordered Andersons to pay the contractor's attorney's fees in the amount of $3,500. From the final judgment, Andersons appeal.

In May 1976, G. C. Anderson, Jr., prepared and entered into a written agreement with Ray Maxwell to have Maxwell build a house for the Andersons. The writing, entitled a "construction agreement," provided a recitation of an "estimated ceiling cost of $46,500" and allowing for a 10 percent margin. During the course of construction, Anderson requested numerous changes or additions, which totaled in cost some $14,157.40. The construction agreement provided that Maxwell was to be paid on a monthly basis for his materials and on a bi-weekly basis for labor.

The construction proceeded normally and Andersons made their payments on schedule until September 13, 1976, when Mr. Anderson told Maxwell he did not have enough money to make the next payment. Maxwell considered himself terminated on the 17th of September and withdrew his crew from the project. Anderson contacted Maxwell on the 23rd to arrange his return to the job, but on the following day no workmen were on the job. Maxwell filed a mechanic's lien to protect his interest and the materials for which he had not been paid.

-2-

At trial Maxwell limited his proof to the issue of how much money he had put into the project by the time his lien was filed and the amount he had actually been paid.

Following September 1976, three other business firms, Marchello Hardware, Sherwin Williams, and American Appliance Co., also filed liens on materials used on the project. By the pleadings, the parties had put into issue the question of which party, the Andersons or Maxwell, was responsible for this payment. (The American Appliance lien was included in Maxwell's lien, and Maxwell has acknowledged its payment prior to appeal.)

At the conclusion of trial without a jury, the court entered the following conclusions and judgment:

"1. Mr. Maxwell has filed a mechanic's lien in accordance with Section 45-502, Revised Codes of Montana, 1947, as amended.

"2. The mechanic's lien was properly foreclosed and recovers the value of labor and material as set forth in the lien.

"3. Mr. Maxwell substantially completed construction of the defendants' dwelling.

"4. The defendants are legally responsible for additional liens and charges against the defendants, individually or against the property.

"5. The term 'estimates' as used in the May 15, 1976, agreement does not limit the amount of money that the plaintiff may recover.

"6. That the defendant, G. C. Anderson, is not entitled to any damages based on loss of wages.

"7. That Mr. Maxwell is not a general contractor as a matter of law.

"8. The plaintiff is entitled to reasonable attorneys' fees as provided by Section 93-8614, Revised Codes of Montana, 1947, as amended.

"JUDGMENT

"Pursuant to the foregoing Findings of Fact and Conclusions of Law, judgment is entered in plaintiff's favor as follows:

"1. The defendants shall pay to the plaintiff the sum of Fifteen Thousand Six Hundred Thirty-Six and 38/100 Dollars, ($15,636.38), minus the following set-offs, for a total of Fifteen Thousand Thirty-Eight and 88/100 Dollars ($15,038.88):

"a. Bypass Valve-----------$70.00
"b. Correction of Wall----- 7.50
"c. Correction of Stairwell 20.00
"d. Correction of Crawl
     Space ---------------500.00
                        $597.50

"$15,636.38
 -   597.50
 $15,038.88

"2. The defendants shall pay to the plaintiff interest on the above amount from September 23, 1976, until the entire debt has been paid in full.

"3. That in the event the defendants are unable to pay the amount of the judgment, the Court shall supervise the sale of any and all assets of defendants which may be held to satisfy said judgment.

"4. That plaintiff have judgment against defendants for any deficiency remaining in the event the proceeds from the sale do not satisfy plaintiff's claim.

"5. That the defendants pay any and all additional liens against the property.

"6. The defendants shall pay reasonable attorneys' fees in the amount of Thirty Five Hundred Dollars ($3500.00), and the plaintiff shall pay the balance of Fifteen Hundred Two Dollars ($1502.00).

"7. That defendants shall pay all costs of suit."

Appellants present five issues for review by this Court:

1. Is a lienholder entitled to judgment on his mechanic's lien without reference to an estimated price stated in the contract upon which the lien is based?

2. Is the defendant in a lien foreclosure action entitled to a directed verdict when the lienholder fails to show by the parties' contract that he was in fact entitled to the amount on which he intends to foreclose?

-4-

3. Is an award of attorney's fees properly made when

(a) the prevailing party failed to present evidence on fees its case-in-chief? and,

(b) the losing party had no opportunity to cross-examine as to the amount of fees involved?

4. May a District Court properly order a party in a lien foreclosure action to pay off liens held by other lienholders who are not parties to the foreclosure?

5. Is an appellant entitled to attorney's fees in the event that he prevails on appeal?

The first two issues involve the same basic question and can be treated as one issue.

Appellants' position is that the maximum price they could be expected to pay under the facts is the "total ceiling cost" of $51,150 plus additional costs for their alterations, amounting to $14,157.40. Although appellants do not state this figure in their brief, it appears that the total they consider themselves to owe Maxwell under any circumstance is $65,307.40. Appellants do not consider themselves responsible for the payment of $9,223.41 to other contractors. The District Court specifically found the Andersons "legally responsible for additional liens and charges."

Maxwell contends that because he chose to proceed under the lien statutes, rather than contract law, the lien law governs this case. Under the applicable lien law, he contends, he is entitled to an equitable quantum meruit for materials and labor put into the project without regard to any underlying contract or agreement. He further argues that, even if the matter were to be decided under contract law, the estimated price indicated in the construction

-5-

agreement would not act as a limit on the contractor's recovery.

The Montana mechanic's liens statute does not specifically say what role the contract between the owner and lienholder plays in determining the amount of the lien. Section 45-501, R.C.M. 1947, now section 71-3-501 MCA, simply provides:

> "Every . . . builder . . . performing any work and labor upon, or furnishing any material . . . for, any building . . . upon complying with the provisions of this chapter, for his work or labor alone, or material . . . furnished, has a lien upon the property upon which the work or labor is done or material is furnished."

While an agreement is necessary as a prerequisite to a lien's existence, the right is statutory and not dependent on whether the contract with the owners of the property is written, oral, express or implied. Montana decisions are less clear as to how the total contract price affects the amount of the lien. The particular question raised by appellants here was addressed in Smith v. Gunniss (1943), 115 Mont. 362, 383-84, 144 P.2d 186, 193. In Gunniss the owners had contracted for work to be done on their home, but had not agreed upon a total price. Instead, the owners had agreed to pay for the remodeling by signing "a Title One Federal Housing note in the amount due" at the completion of the project. Such notes were limited to $2500 by law. Therefore, the owners argued that they had limited their obligation to that amount. The Court noted, however, that the owners had been apprised during the remodeling that the costs were going over $2900 and that the owners permitted the work to continue beyond that point. Thus, it ruled that the owners had acquiesced in an abandonment of that contract provision.

*Gunniss* is not our case on all points but does demonstrate that under proper circumstances an award can be made based on the reasonable cost of labor and materials furnished by the lienholder, in disregard of the original contract.

Maxwell is in a stronger position because he was building under an agreement drawn by the owner which was based on an "estimated" cost of material and labor for a certain structure. The estimated cost was further subject to a number of variables, i.e., 10 percent original error, owner permitted to furnish all labor possible to hold down costs and the absolute right of the owner to change plans and specifications at will. In any event, other courts have determined estimated costs to mean:

> "The 'estimated cost' of a building means the reasonable cost of a building erected in accordance with plans and specifications referred to and not necessarily the amount agreed upon by the parties or an offer accepted by defendant. . . An estimate is equivalent of 'more or less' and does not pretend to be based on absolute calculations. Use of the word precludes accuracy. 'To make an estimate' ordinarily means to calculate roughly or to form an opinion as to amount from imperfect data. See Beeler v. Miller, Mo. App., 254 S.W.2d 986, 990, and authorities cited; 15 Words and Phrases, 'Estimate', pp. 373-380; Black, Law Dictionary (Fourth Ed. 1951), 648; Ballentine's Law Dictionary (Third Ed. 1969), 420." Denniston and Partridge Co. v. Mingus (Iowa 1970), 179 N.W.2d 748, 752-53.

Appellants admit that all material and labor claimed by Maxwell were in fact used in the construction of the house, and that appellants changed the plans many times during construction. The District Court found that the owners "acted independently and for their own benefit when they purchased material and secured services from other contractors."

Appellants do not attempt to show evidence contrary to the District Court's conclusion. They rely instead upon the

contractor's failure to show a modification in the construction agreement allowing for a higher total price. In this kind of situation, it is not necessary to prove a modification of the contract by Maxwell. The parties never had a "firm" ceiling. Therefore, the District Court properly determined the value of the lien which Maxwell held on Andersons' house. Additionally, the findings of the District Court on this issue were never challenged by substantial evidence to the contrary and must stand affirmed. Morrison v. City of Butte (1967), 150 Mont. 106, 112, 431 P.2d 79.

The remaining issues may be treated summarily. First, appellants contend that the District Court wrongly awarded Maxwell attorney's fees because Maxwell failed to put on evidence of fees during his case-in-chief and because appellants were denied an opportunity to cross-examine as to their reasonableness.

As to the first objection, appellants focus primarily on the District Court's failure to offer an explanation for permitting Maxwell to reopen his case-in-chief and present evidence of attorney's fees. Appellants concede that the matter of permitting a litigant to reopen his case-in-chief is placed within the discretion of the trial court. Section 93-5101(4), R.C.M. 1947, now section 25-7-301(4) MCA. They contend, however, that they were injured by the court's action by the mere fact that Maxwell was permitted to put on evidence and received an award. This has nothing to do with the injury that might result from a disorderly presentation of evidence. No showing is made that appellants were injured by the _manner_ in which the evidence was presented.

-8-

While reopening a case-in-chief may not be desirable, a more substantial showing of harm should be made before this is declared reversible error.

As to the second contention, the District Court ordered Maxwell to present an itemized statement within twenty days, which he did. Some two months later the District Court issued its findings, conclusions, and judgment. Appellants could have obtained a copy and entered their objections at any time during the interim. They should not now be permitted to raise the issue as reversible error.

Appellants' next issue concerns the District Court's jurisdiction to order them to pay debts and liens to entities not parties to the foreclosure action. The District Court did not order appellants to make payments of any specific sums to specific businesses. Instead, it found appellants legally responsible for other liens and charges and ordered generally that appellants pay those.

The issue of other liens and charges arose from the actions of the parties. Maxwell included the lien of American Appliance Co. in his amended lien. Appellants, on November 2, 1977, submitted a motion to amend their answer and counterclaim. In their amended counterclaim they asked the District Court to order Maxwell to pay the debts to Marchello Hardware and Sherwin Williams Co. Thus, the parties asked the District Court to determine which of them owed various separate businesses and thereby submitted themselves to its jurisdiction. On this basis there appears no reason to reverse the District Court's determination of which party owes these other debts.

Appellants' last issue involves attorney's fees. Their argument is very brief on this point. They note first that

they requested reasonable attorney's fees in their answer and counterclaim. Second, they point to the evidence of attorney's fees which they presented at trial. Third, they note that on April 15, 1977, they made an offer of judgment to plaintiff, conditioned upon plaintiff's paying off all the other mechanic's liens which had been filed on the house. Their argument then is:

> "Given the failure of proof on the part of Respondent, as well as Appellants' willingness to settle this matter early on, it is submitted that Appellants were entitled to be awarded attorney fees as prayed for and that the Supreme Court should either order the payment of such attorney fees to Appellants or remand the issue of attorney fees to the District Court for further testimony in connection therewith."

Section 93-8614, R.C.M. 1947, now section 71-3-124 MCA, establishes the principle of when attorney's fees are recoverable on a lien foreclosure action. They are recoverable in a reasonable amount "to each claimant whose lien is established" and "to the defendant against whose property a lien is claimed, if such lien be not established." The statute makes attorney's fees recoverable to the prevailing party. If the defendants, appellants in this case, do not win, they are not entitled to attorney's fees.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-