No. 80-429

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

WALTER F. DUSSAULT and ARLENE S. DUSSAULT,

Plaintiffs and Respondents,

vs.

F. HJELM,

Defendant and Appellant.

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Ravalli
Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

For Appellant:

John M. McRae argued, Hamilton, Montana

For Respondents:

Recht and Greef, Hamilton, Montana
John D. Greef argued, Hamilton, Montana

Submitted: April 21, 1981

Decided: May 13, 1981

Filed: MAY 13 1981

*Thomas J. Kearney*

Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Defendant, Flo Hjelm, appeals from a judgment of the Fourth Judicial District, Ravalli County, entered in favor of plaintiffs, Walter F. and Arlene S. Dussault. This judgment terminated a lease of real property, granted possession of the property to plaintiffs, held that the Landlord and Tenant Act did not apply thereby entitling plaintiffs to treble damages under the unlawful detainer statutes, and awarded attorney fees and costs to plaintiffs.

Flo Hjelm owned property outside the City of Hamilton, Ravalli County, Montana. On February 27, 1979, Hjelm sold this property to Walter and Arlene Dussault. The instrument formalizing the terms of the sale contained a lease-back provision by which Hjelm was given an option to rent the buildings on the conveyed property along with six acres of land. This lease-back provision stated:

> "The Seller herein may, at her option, rent from the Buyers the buildings conveyed by her to the Buyers, together with approximately six (6) acres of land for the annual rental of $3,000.00 for one year, commencing from the date of this agreement and said rent shall be payable on or before December 1, 1979, and it is further provided that the agreement shall be automatically renewed from year to year unless one party gives written notice of at least ninety (90) days before the expiration of the current year of their intent to cancel or amend the terms."

Hjelm exercised the option to rent and continued in possession of the property.

At the time of the sale and continuing throughout the possession of the property, Hjelm maintained 15 to 20 horses on the property. Hjelm also kept, on an intermittant basis, some cows, chickens, a goat and other domesticated animals.

On November 9, 1979, Dussaults served notice upon Hjelm that the rental agreement would terminate on February 27,

1980.  Subsequently, a dispute between the parties arose regarding whether the first lease-year ended on December 1, 1979 or February 27, 1980.  As a result of the dispute, Hjelm paid only $2,000 rent and refused to vacate the premises on February 27, 1979.

On March 7, 1980, Dussaults commenced an action under the Montana unlawful detainer statutes.  Section 70-27-206, MCA, provides for an award of treble damages.  Hjelm moved to dismiss, claiming her occupancy of the premises was governed solely by Montana Residential Landlord and Tenant Act of 1977.  (Hereinafter referred to as the Landlord and Tenant Act.)  Under this Act treble damages can only be awarded upon a showing of purposefulness and bad faith.  Section 70-24-429(1), MCA.  The District Court granted Dussaults time to amend their complaint to allege sufficient facts excepting the tenancy from the province of the Landlord and Tenant Act.

Dussaults amended the complaint, alleging that Hjelm's occupancy was exempt from the Act by virtue of the "agricultural" exclusion contained in section 70-24-104(8), MCA.  Hearing on the matter was held May 30, 1980.  On August 15, 1980, the District Court held that the lease agreement was excluded from the Landlord and Tenant Act.  The District Court rendered judgment in favor of the Dussaults in accordance with Montana unlawful detainer provisions.

The dispositive issue on appeal is:

1. Whether the District Court erred in concluding that the action on the subject lease agreement was properly brought under unlawful detainer statutes, precluding application of the Landlord and Tenant Act by virtue of the exclusionary provision, section 70-24-104(8), MCA?  Resolu-

tion of this issue determines the question of whether treble damages were an appropriate award.

Section 70-24-104, MCA, sets forth rental arrangements which are excluded from the province of the Landlord and Tenant Act. Pertinent to this appeal, this provision states:

> "Unless created to avoid the application of this chapter, the following arrangements are not governed by this chapter:
>
> "(8) occupancy outside a municipality under a rental agreement which includes hunting, fishing, or agricultural privileges along with the use of the dwelling unit." Section 70-24-104(8), MCA.

In construing this statute, we are governed by the rule of construction that ". . . a relative clause must be construed to relate to the nearest antecedent that will make sense." State v. District Court of the First Judicial Distr. (1936), 103 Mont. 487, 501, 63 P.2d 141, 144; State v. Centennial Brewing Co. (1919), 55 Mont. 500, 513, 179 P. 296, 298. Therefore, the relative clause "which includes hunting, fishing, or agricultural privileges" necessarily modifies the noun phrase "rental agreement", not the more remote noun "occupancy". Thus, before a rental agreement can be excluded from application of the Landlord and Tenant Act by virtue of section 70-24-104(8), MCA, hunting, fishing or agricultural privileges must be granted by the terms of the lease agreement.

The granting terms of the rental agreement between appellant and respondents state:

> "The Seller herein may, at her option, rent from the Buyers the buildings conveyed by her to the Buyers, together with approximately six (6) acres of land . . ." (Emphasis added.)

The difficulty in the case at bar arises as a result of the noted language. The buildings mentioned are not delineated

anywhere in the agreement. Without description of the buildings it is impossible, without resort to parol evidence, to determine whether the lease intends commercial, agricultural or strictly residential purposes. Couple this with the grant of six acres of land and the parties' intent becomes even less clear. Thus, a close examination of the lease reveals an ambiguity which necessitates parol evidence.

Section 28-3-303, MCA, provides that "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this chapter." (Emphasis added.) As discussed, ascertaining the intentions of the parties to this action is not possible merely by examining the lease. Section 28-3-402, MCA, states "[a] contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." This statute is in accord with section 1-4-102, MCA, regarding the interpretation of instruments, which provides "[f]or the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may also be shown so that the judge be placed in the position of those whose language he is to interpret." Furthermore, section 28-2-905(2), MCA, specifically permits consideration of extrinsic evidence regarding a written agreement to explain an extrinsic ambiguity. Under this statutory authority, the District Court properly accepted parol evidence regarding the lease agreement in order to explain the circumstances surrounding the agreement, thus resolving the ambiguity which existed in the instrument.

The parol evidence presented at trial consisted of photographs and testimony from the parties. The photographs

established that the buildings, which were the subject of the lease, consisted of a small house, large barn and extensive corrals, several storage and chicken sheds and garages. Respondent testified that during negotiation of the terms, appellant stated to him that she needed the property to maintain her animals until she could locate a larger farm. Appellant testified that prior to entering into the lease and continuing throughout her possession, she maintained horses on the property, plus several cows, goats and other domestic animals on an intermittant basis.

From this evidence, the District Court could determine the parties' intentions in leasing the property. Clearly, appellant needed the property in order to care for and raise the livestock which she owned. The only question remaining is whether maintenance of livestock in an operation of this scale is agricultural within the meaning of that term in section 70-24-104(8), MCA?

Appellant argues that the term "agricultural" as used in section 70-24-104, MCA, encompasses only occupancies where farming or ranching operations, whether primary or secondary, are engaged in for profit. Examination of section 70-24-104, MCA, discloses that legislative intent forecloses such an interpretation. The term "agricultural" appears twice in section 70-24-104, MCA. Under subsection (6), "occupancy under a rental agreement covering premises used by the occupant primarily for commercial or agricultural purposes" is excluded from the Landlord and Tenant Act. Under subsection (8), "occupancy outside a municipality under a rental agreement which includes hunting, fishing, or agricultural privileges along with the use of the dwelling unit" is excluded from the Act.

Reading these sections together, it is clear the legislature intended a comprehensive coverage of all agricultural operations, whether they are large scale operations for profit, or small scale operations secondary to the use of a residence. The term "agriculture" has a very broad definition in the law. Black's Law Dictionary, Revised Fourth Edition, defines agriculture as:

> "The art or science of cultivating the ground, including the harvesting of crops, and in a broad sense, the science or art of production of plants and animals useful to man, including in a variable degree, the preparation of these products for man's use . . ." Page 91.

In light of this definition and the format of section 70-24-104, MCA, the District Court properly determined that agricultural privileges, within the meaning of section 70-24-104(8), MCA, were granted by the lease agreement. Such a finding forecloses application of the Landlord and Tenant Act, and provisions of the unlawful detainer statutes govern. Plaintiffs were entitled to treble damages for the time defendant "held over" following termination of the tenancy.

Each party shall be responsible for his or her own attorney fees relating to this appeal.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices