No. 82-242

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

EDWARD MATOS,

Plaintiff and Appellant,

vs.

DANN D. ROHRER and
PAULA ROHRER, INDIVIDUALLY
and AS HUSBAND AND WIFE;
JOEL A. RUCKER et al.,

Defendants and Respondents.

---

Appeal from:   District Court of the Nineteenth Judicial District,
               In and for the County of Lincoln
               Honorable Robert M. Holter, Judge presiding

Counsel of Record:

      For Appellant:

          Ann German, Missoula, Montana
          James P. Taylor, Missoula, Montana

      For Respondents:

          Scott B. Spencer, Libby, Montana

---

Submitted on briefs: December 16, 1982

Decided:   March 24, 1983

Filed: MAR 24 1983

_Ethel M. Harrison_
_____
                      Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff appeals from a judgment in the Nineteenth Judicial District Court, Lincoln County, in this action for lien foreclosure. We affirm the District Court, but remand for a redetermination of fees and costs.

Plaintiff presents the following issues for review:

1. Whether the District Court erred in admitting parol evidence to "modify" the written agreement between the parties.

2. Whether Matos is entitled to an equitable quantum meruit for services and materials of which respondents received the benefit.

3. Whether the District Court erred in ruling that Matos' mechanic's lien was insufficient.

4. Whether the trial court's findings of fact and conclusions of law are supported by substantial credible evidence.

Defendants seek attorney's fees on appeal. Plaintiff seeks to have the fees and costs assessed against him overturned.

In the winter and spring of 1980, defendants Dann and Paula Rohrer (Rohrers) discussed with plaintiff Edward Matos (Matos), a local building contractor, the possibility of his building them a passive solar home. Matos began construction on the Rohrer home in May of 1980. On June 23, 1980, at Rohrers' request, Matos prepared a proposal, which stated in pertinent part:

"Rohrers agree on a cost & $16,000
with $86,000 as a total cost in mind

using attached cost guide-lines

Rohrer agrees to do complete plumbing and electrical work
Contractor to buy materials

All of the above work to be completed in a substantial and workmanlike manner for the sum of cost plus $16,000 . . .
Payments to be made each_____as the work progresses to the value of _____(95%) per cent of all work completed. The entire amount of contract to be paid within 10 days after completion.
Any alteration or deviation from the above specifications involving extra cost of material or labor will only be executed upon written orders for same,and will become an extra charge over the sum mentioned in this contract. All agreements must be made in writing." (Emphasis added)

Included with the contract was a list of cost guidelines, which the parties accept as part of the contract, and which stated in pertinent part:

"cost guide lines to < [less than] $86,000

not to exceed

| | |
|---|---|
| Fireplace | 4,000 |
| Plumbing & electrical mat. | 4,500 |
| Roof $65 @ square | $65 @ sq. |
| Siding   $700 M | $700 M |
| Grhouse. siding $400 M | $400 M |
| Fl. covering | $12 yds. |
| Cabinets (kit. & bath) | $4,000 |
| Built-ins kept moderate | |
| Interior ceiling | $400 M" |

(Emphasis in original)

The parties signed the contract on June 30, 1980.

During the summer of 1980, the Rohrers talked with Matos on several occasions. Matos repeatedly assured them that the costs of lumber and certain other materials were lower than anticipated. During this period, the Rohrers requested a number of items for the home, which included extra built-in cabinets, a bay window, hard-core instead of hollow-core doors, additional or more costly lighting and plumbing fixtures, various changes in windows and ceiling, and additional masonry work. There was no written agreement to

3

charge extra for additional work, nor was there evidence of an explicit agreement, written or oral, to waive the contract provision requiring such a written agreement. Rohrers testified that they orally agreed to pay Matos $500 more to cover the extra cost of the electrical fixtures and doors, but that there were no other additional charges agreed upon.

As the building of the house progressed, Matos paid most of the bills for labor and materials and was paid in turn by Rohrers, "when needed".

In September of 1980, Matos informed Rohrers that the house was costing more than anticipated, and that the final price would be between $95,000 and $100,000. Rohrers were very upset, and indicated they did not know where they would get the additional money. Matos insists the Rohrers neither ordered him to stop working nor put a ceiling on costs. Rohrers are equally adamant in their claim that they told Matos if he couldn't finish the house for between $90,000 and $91,000, then "he and the workmen should just quit, and we would finish it as we could afford to." According to Rohrers, Matos said "he would try and see what he could do."

There was no further contact between the parties until the second week in October, when, upon Rohrers' return from a trip to Chicago, Matos informed them the house would cost over $100,000. At that time, Rohrers ordered Matos to quit working on the house. Matos' final price on the home was $103,544.45. Rohrers paid Matos a total of $86,500. The parties agree that the total cost of labor and materials for the house was $84,881.13.

On December 23, 1980, Matos filed a mechanic's lien against Rohrers' property in the amount of $18,525.00. The lien provided in pertinent part:

4

"That it is the intention of EDWARD MATOS, of Libby, Montana, claimant herein, to claim and hold a lien upon that certain tract or parcel of land hereinafter described, for the sum of $18,525.00 with interest thereon at the rate of 10% per annum from 10/24/80 until paid.

" . . .

"That the names of the owners of said premises described above at the date of this instrument according to the real estate records of Lincoln County, Montana, are Dann D. Rohrer and Paula Rohrer, of Libby, Montana." (Emphasis added)

The lien incorporated by reference two attachments, the first being a legal description of the parcel of land upon which the improvements were made, the second being a specific list of additional costs amounting to $18,525.00.

On February 19, 1981, Matos filed a complaint, seeking judgment against Rohrers in the amount of $18,525.00, to be derived from the proceeds of a sheriff's sale of the Rohrer property. Matos also sought judgment that his lien had priority over liens established by several material men, named as defendants in this action.

Rohrers answered that (1) the lien was invalid for failing to describe the "building structure or improvement" to which it attached; (2) under the contract and in accordance with Matos' subsequent verbal assurances, the ceiling price of the house was $86,000; and (3) Matos was responsible for any unpaid obligations from the construction of the house. Rohrers also counterclaimed, seeking damages for breach of contract, judgment that Matos was responsible for unpaid construction debts, and judgment removing all liens and quieting title to the real property involved.

On December 15, 1981, Matos moved in limine for exclusion of "any and all evidence sought to be admitted to alter, vary, or interpret the terms of" the June 23, 1980 agreement. The motion was denied.

On December 21, 1981, the claim of defendant Loveless and Company, d/b/a Larry's Furniture, was dismissed by stipulation of the parties as being fully settled.

Trial was held January 19, 1982 before the District Court judge sitting without a jury. Judgment for defendants was entered March 16, 1982. Matos was ordered to pay defendants the sum of $8,651.90, which included payment made by Rohrers, to unpaid material men for supplies for the house. The court also awarded Rohrers costs in the amount of $187.50 and attorney's fees amounting to $2,230.00. All liens against the Rohrer property were discharged. Matos' motion for new trial or, alternatively to amend findings, was denied. Plaintiff Matos appeals.

## I.

Matos maintains that the terms of the June 23, 1980 contract were clear and unambiguous; that the contract was a simple "cost-plus" contract; and that the District Court erred in admitting parol evidence to "modify and contradict" its terms.

We do not agree. The parol evidence rule, as codified in section 28-2-905, MCA, provides:

> "When extrinsic evidence concerning a written agreement may be considered. (1) Whenever the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms. Therefore, there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing except in the following cases:
> (a) when a mistake or imperfection of the writing is put in issue by the pleadings;
> (b) when the validity of the agreement is the fact in dispute.
> (2) This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as described in 1-4-102, or other evidence to explain an extrinsic ambiguity or to establish illegality or fraud.
> (3) The term 'agreement', for the purposes of this section, includes deeds and wills as well as contracts between parties." (Emphasis added)

See Dussault v. Hjelm (1981) ____ Mont. ____, 627 P.2d 1237, 1239-40, 38 St.Rep. 738, 741, where this Court, relying upon section 28-2-905, MCA, upheld the District Court's acceptance of parol evidence regarding a lease agreement to resolve the ambiguity which existed in the instrument. See also Downs v. Smyk (1982) ____ Mont. ____, 651 P.2d 1238, 1244, 39 St.Rep. 1786, 1794.

In the case at bar, the contract, in one place, refers to "cost & $16,000--with $86,000 as a total cost in mind"; in another place it states, "All of the above work to be completed . . . for the sum of cost plus $16,000"; and in yet another (the attached guidelines), is found the phrase "cost guide lines to < [less than] $86,000", followed by the words, "not to exceed." These additional terms imply, but do not positively establish, a definite ceiling price. The contract is unclear as to whether "total cost" is meant to include the contractor's fee of $16,000. There is no way that scrutiny of the contract itself will render these terms certain and unambiguous. Therefore, we find that the District Court properly admitted parol evidence to aid it in interpreting the June 23, 1980 contract.

The question then becomes a factual one: Whether the District Court, as fact-finder, wrongly determined that the June 23, 1980 agreement involved a ceiling price of $86,000, including the contractor's fee.

> "In reviewing findings of fact in a civil action tried by the District Court without a jury, this Court is confined to determining whether there is substantial credible evidence to support those findings. Hornung v. Estate of Lagerquist (1970), 155 Mont. 412, 473 P.2d 541. Although conflicts may exist in the evidence presented, it is the duty and function of the trial judge to resolve such conflicts. His findings will not be disturbed on appeal where they are based on substantial though conflicting evidence. Fausett v. Blanchard (1969), 154 Mont. 301, 463 P.2d 319. Finally, in determining whether the trial court's findings are

7

supported by substantial evidence this Court must view the evidence in the light most favorable to the prevailing party. Hellickson v. Barrett Mobile Home Transport, Inc. (1973), 161 Mont. 455, 507 P.2d 523." Bauer v. Cook (1979) 182 Mont. 221, 225-26, 596 P.2d 200, 203.

Here, the evidence is conflicting. Matos testified that the parties had agreed on a cost-plus contract with no ceiling because the Rohrers wanted to be free to choose suitable fixtures and decorations for the interior of their house. Dann Rohrer testified:

"We said, 'We couldn't spend over Eighty-six', and he said, 'Well, if everything goes okay, it should be between Eighty and Eighty-Six. It could be as much as Eighty-six.'

"Q. Then, you did tell Mr. Matos that there was a limit on the price?

"A. Yes--yeah. We told him that there was no way that we could go over Eighty-six, and that would have to be the total cost--maximum, total cost.

" . . .

"The one thing that we had told him we wanted, and that was, a ceiling . . .

" . . .

"Q. Was it your understanding at, that time, that there was a limit on the contract?

"A. Oh, definitely. We never went into it any other way.

"Q. Did Mr. Rohrer--did Mr. Matos lead you to believe that there was a ceiling on that contract?

"A. That's why we have it written in the total cost, not to exceed the total means--that's what the total means."

Paula Rohrer testified that she and her husband had "made it very clear to [Matos] that we had to have a ceiling." The transcript includes the following testimony of Paula Rohrer:

"Q. Okay. Paula, did you then enter into an agreement to build a house?

"A. Yes, we did.

"Q. And was there a ceiling?

8

"A.  Yes, there was.

"Q.  And what was the ceiling?

"A.  Eighty-six Thousand Dollars.

"  .  .  .

"Q. Did you have the Contract explained by anybody?

"A.  Ed Matos.

"Q.  And did he tell you that there was a ceiling on the Contract?

"A.  Yes."

The District Court's findings included the following:

"7.  During negotiations, the Rohrers had several conversations with Matos about the cost of the home.  Matos assured the Rohrers the cost would not exceed $86,000.00.

"  .  .  .

9.  At the time [the contract] was signed, the Rohrers had Matos explain the terms of the contract.  Matos told the Rohrers the contract provided that the house would cost no more than $86,000.00.

We hold that there is substantial evidence supporting those findings, as well as the District Court's conclusion that" [t]he contract between the parties was a cost plus $16,000.00 fee contract, with a maximum guaranteed price of $86,000.00."

II.

Matos claims that the District Court "ignored all aspects of the case concerning [his] equitable rights as a lienholder".  He also maintains that, regardless of the terms of the contract, he is entitled to a reasonable quantum meruit for supplying services and materials of which Rohrers received the benefits.  Matos relies primarily upon this Court's holdings in Smith v. Gunniss (1944) 115 Mont. 362, 144 P.2d 186, and Maxwell v. Anderson (1979) 181 Mont. 215,

593 P.2d 29. We do not find those cases dispositive although both indicate that:

> " . . . under proper circumstances an award can be made based on the reasonable cost of labor and materials furnished by the lienholder, in disregard of the original contract." Maxwell, 181 Mont. at 221, 593 P.2d at 32.

In Maxwell this Court held that, where the total price was an estimate, and thus there was never a firm ceiling to the contract, it was unnecessary to modify the contract to allow for a total higher price caused by the owners' numerous changes in plans during construction. The case may be distinguished from the case at bar, where there was a definite ceiling.

In Smith, defendant owners appealed from the foreclosure of a contractor's mechanic's lien on their house. Defendants had ordered the contractor to cease his work after more than two months, because they felt the price was getting too high. They had paid him nothing and refused to pay him. This Court held that, although the maximum cost of the contract appeared to be fixed at $2,500 because the Federal Housing Note out of which payment was to be made was limited to no more than $2,500, that was not the case for several reasons. First, the contract was a cost-plus contract without a fixed ceiling; second, the owners had acquiesced in the continued construction, knowing the cost was already well over $2,500; and third, the owners' changes in the plans necessarily changed the cost of construction.

There are significant differences between Smith and the case at bar. First, the contract was, as the District Court found and we herein affirm, not a simple cost-plus contract, but a cost-plus contract with a definite ceiling of $86,000. Second, the Rohrers did not just acquiesce in the continued building, upon learning that the estimated total price of the

10

house would far exceed the ceiling price. They told Matos to cease construction at once if he could not complete the project for less than $91,000. Matos said he would see what he could do, continued the construction, and, a month later, with no further contact between the parties, informed Rohrers that the total cost was now over $100,000. There is no "acquiescence" here, by the Rohrers; there is, instead, Matos' failure to abide by the terms of an implied, conditional agreement to waive the contract's ceiling price. Finally, although the record indicates that Rohrer did request numerous changes in the plans, Matos has failed to establish the additional costs, if any, of those changes.

The District Court concluded that "the parties agreed to extras in said construction at a cost of $500." The record supports this conclusion. This Court has long observed the doctrine of implied findings, i.e., that we will imply findings which are supported by the evidence and necessary to the District Court's judgment. Berry v. Romain (1981) _____ Mont. _____, 632 P.2d 1127, 1132, 38 St.Rep. 1434, 1439-40. The finding implicit in the above conclusion is that Matos failed to establish agreement between the parties involving additional costs above the agreed-upon $500 and that he failed to establish the cost of those other extras. It is true that according to the pre-trial order, the stipulated total cost of labor and materials, exclusive of Matos' contractor's fee, was $84,881.13. But that does not indicate the additional cost, if any, of each change in the plans. Nor, without further evidence, is additional cost established by Matos' list of such costs attached to the lien upon the Rohrer property.

11

The Rohrers testified that they agreed with Matos to pay $500 extra for solid-core doors and additional lighting fixtures. The contract required that:

"Any alteration or deviation from the above specifications involving extra cost of material or labor will only be executed upon written orders for same, and will become an extra charge over the sum mentioned in this contract. All agreements must be made in writing."

The record contains no such written orders or agreements, nor evidence of any explicit agreement, written or oral, to waive the above provision. The considerable evidence of the parties' oral agreement to pay $500 extra for solid-core doors and additional light fixtures was properly treated as waiving the provision as to that particular agreement. The evidence establishes the nature of the alteration and the agreed cost of the alteration. There is no such compelling evidence to establish the extra costs of other deviations from the plans. Steve Logan, a supervising worker on the construction job, testified that he told Rohrers that changing the downstairs closets would be "relatively expensive", and the different light fixtures would involve labor. And Rohrers admit that Matos had told them certain changes would drive up the cost of construction. But when asked whether they had paid for those changes, Dann Rohrer answered, "That's why we paid the Five Hundred Dollars more--because we did change a couple of things."

Matos testified that the cost guidelines were exceeded by certain extras, e.g., the fireplace and the built-in cabinets. But he did not present specific evidence concerning the amount of overruns. Indeed, he testified that, because he considered the contract a cost-plus contract, he did not keep a close tally of costs; he "didn't take specific bills and go back and refer to some other

12

document or estimate on price of sheetrock." Instead he paid most bills as they came in and requested money from the Rohrers when he needed it.

We note also that, in both Smith and Maxwell, we affirmed the District Court. In Maxwell we held that "the findings of the District Court were never challenged by substantial evidence to the contrary and must stand affirmed." 181 Mont. at 222, 593 P.2d at 33. Smith, too, turned on certain "undisputed facts" which established among other things that "as the work progressed, changes were made in the plans from time to time by the defendants which changes would necessarily change the cost of the construction." 115 Mont. at 384, 144 P.2d at 193.

Here, appellant Matos would have us overturn a district court judgment which turns in large part upon factual determinations by the District Court. We do not find Smith and Maxwell govern the outcome of this issue.

A mechanic's lien is recognized in this state as "a creature of statute, remedial in nature, with its foundation in equity and natural justice." Beck v. Hanson (1979) 180 Mont. 82, 87, 589 P.2d 141, 144. The trial court's findings of fact will not be disturbed by this Court, on the appeal of equity cases where the evidence does not preponderate decidedly against those findings. Rase v. Castle Mountain Ranch (1981) ____ Mont. ____, 631 P.2d 680, 684, 38 St.Rep. 992, 996. The evidence must be viewed in the light most favorable to the prevailing party in the District Court. Hagfeldt v. Mahaffey (1978) 176 Mont. 16, 18, 575 P.2d 915, 916-17.

A review of the record discloses that there is not a preponderance of the evidence indicating that, contrary to the conclusions of the District Court, Matos is entitled, in

13

equity, to a sum in excess of the contract sum of $86,000 plus the $500 paid for changes requested by the Rohrers.

### III.

We may deal summarily with other issues raised. The District Court, in its memo accompanying its findings and conclusions, noted that Matos' lien was defective for failure to describe the building or improvements upon which the lien was claimed; that a mere legal description of the property was not sufficient. Here, since this Court has affirmed the District Court in its determination that Matos is not entitled to the additional costs which are the basis for his lien, we deem it unnecessary to consider the technical validity of that lien. Without a debt there can be no lien. Pittsburgh Plate Glass Co. v. Culbertson Hotel Co. (1922) 62 Mont. 605, 609, 205 P .957, 959.

Matos maintains that the judgement must be reversed, because of numerous technical inconsistencies in the District Court's findings, which indicate that the District Court failed to fairly consider the evidence and carefully make its own findings.

Where findings and conclusions, which are proposed by the parties and adopted by the trial court, are supported by the evidence and are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, their adoption will not provide grounds for reversal. See In re Marriage of Hunter (1982) ____ Mont. ____, 639 P.2d 489, 495, 39 St.Rep. 59, 67; In re Marriage of Jensen (1981) ____ Mont. ____, 631 P.2d 700, 703-04, 38 St.Rep. 1109 1113. Here, although there is technical merit in several of the points raised by appellant Matos, we do not consider any of the points significant enough to affect the District Court's conclusion. We hold, therefore, that the several minor discrepancies in

14

the District Court's findings do not warrant our remanding this case for reconsideration.

We do note a mathematical error in the court's determination of the amount due Rohrers. The court failed to consider the $500 increase for extras in the total price. Therefore, the judgment for Rohrers should amount to $8,151.90 rather than $8,651.90, as ordered.

Rohrers seek attorney fees on appeal, while Matos seeks to have this Court overturn the District Court's award of attorney fees and costs to Rohrers.

> "A party who successfully defends against a foreclosure action must be allowed a reasonable attorney fee in both the District Court and the Supreme Court. Section 7-3-124, MCA.
>
> " . . .
>
> "There is no statutory provision for an award of attorney fees in successfully prosecuting the counterclaim for damages. Costs are recoverable on the counterclaim, sections 25-10-101(3), 25-10-102, and 25-10-201, MCA; but attorney fees are not recoverable costs in the absence of statute or contractual agreement of the parties. Winer v. Jonal Corp. (1976), 169 Mont. 247, 545 P.2d 1094, and cases therein cited." Carkeek v. Ayer (1980) ____ Mont. ____, 613 P.2d 1013, 1015, 37 St.Rep. 1274, 1275-76.

The findings and judgment indicate the District Court did not distinguish between or separate those fees incurred by Rohrers in defending against the lien and those incurred in prosecuting their counterclaim. We therefore remand this cause for a determination of the attorney fees in the District Court and the Supreme Court to which Rohrers are entitled under the above statutes and the rule stated in Carkeek, and for correction of the amount of damages awarded Rohrers to $8,165.90.

With the above-noted exceptions, the judgment is affirmed.

Justice

15

We concur:

_____
Chief Justice

_____

_____

_____
Justices

16