DA 11-0029

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 211

CREDIT SERVICE CO., INC.,

      Plaintiff and Appellee,

  v.

SHERYL CRASCO,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. 10-1373
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          D. Michael Eakin, Montana Legal Services Association, Billings, Montana

      For Appellee:

          Matthew L. Erekson, Attorney at Law, Missoula, Montana

Submitted on Briefs:   July 20, 2011

Decided:   August 30, 2011

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Sheryl Crasco (Crasco) appeals from the order of the Thirteenth Judicial District Court, Yellowstone County, that ordered Crasco to pay bad check penalties to Credit Service Co. (Credit Service) pursuant to § 27-1-717(3), MCA, based on insufficient funds checks written by Crasco to secure three payday loans.  We reverse and remand.

¶2     Crasco raises the following issue:

¶3     *Could a collection agency charge bad check penalties under § 27-1-717(3), MCA (2007), for checks assigned to it from payday lenders when § 31-1-722(3), MCA (2007), prohibits the payday lenders themselves from charging such penalties?*

¶4     Crasco obtained three "deferred deposit loans" from three different lenders.  Section 31-1-703(5), MCA, defines a "deferred deposit loan" as an arrangement in which a person accepts a check in exchange for a loan and agrees not to cash the check until some future date.  Deferred deposit loans are commonly known as payday loans.  Payday loans may not have a term that exceeds 31 days.  Section 31-1-715(1), MCA.  Payday loans can be made only for principal amounts between $50 and $300.  Section 31-1-715(2)-(3), MCA.

¶5     Crasco secured the three payday loans at issue with post-dated checks.  Crasco used a $345 check dated March 31, 2009, to secure a payday loan from Western Pawnbrokers.  Crasco used a $245 check dated April 15, 2009, to secure a payday loan from E-Z Money Check Cashing.  Crasco used a $369 check dated May 1, 2009, to secure a payday loan from Money Lenders.

2

¶6    The payday lenders deposited the checks at the expiration of the loan period.  The payor banks returned the checks for insufficient funds.  The payday lenders assigned the checks to Credit Service, a collection agency.  Credit Service sent demand letters to Crasco in July 2009.  The letters demanded payment of the face value of the checks and a $30 service fee per check.  The letters also indicated that Credit Service could collect "$100.00 or three times the face amount of the check (not to exceed $500.00) as provided for under Section 27-1-717, MCA (2003)."

¶7    Credit Service filed the instant action in August 2009 in the Yellowstone County Justice Court to recover the face value of the checks, a $30 service fee per check, and bad check penalties of $500 per check.  Crasco argued that the bad check penalties could not be assessed against the payday loan checks.  Crasco counterclaimed to recover $1000 penalty on each check, costs, and fees pursuant to § 31-1-724(3), MCA, for Credit Service's allegedly illegal pursuit of the bad check penalties.

¶8    The Yellowstone County Justice Court determined that Crasco must pay to Credit Service the face amount of each check and the $30 service charge on each check.  The Justice Court concluded that Credit Service could not collect the bad check penalties.  The Justice Court concluded that Crasco could recover damages pursuant to § 31-1-724(3), MCA, for Credit Service's illegal pursuit of the bad check penalties.

¶9    Credit Service appealed to the District Court.  Credit Service raised two issues in the District Court.  Credit Service first argued that the Justice Court incorrectly had concluded that collection agencies could not charge bad check penalties on checks that had been used to

3

secure payday loans. Credit Service also argued that the Justice Court incorrectly had awarded Crasco damages pursuant to § 31-1-724, MCA.

¶10 The District Court reversed. The District Court determined that Credit Service could collect the bad check penalties. The District Court did not address the issue regarding Credit Service's potential liability for damages pursuant to § 31-1-724, MCA.

## STANDARD OF REVIEW

¶11 We review to determine whether a district court acting in an appellate capacity reached the correct conclusions under the appropriate standards of review. *State v. Finley,* 2011 MT 89, ¶ 17, 360 Mont. 173, 252 P.3d 199. We review a district court's conclusions of law for correctness. *BNSF Ry. Co. v. Cringle,* 2010 MT 290, ¶ 11, 359 Mont. 20, 247 P.3d 706.

## DISCUSSION

¶12 The Montana legislature enacted the Montana Deferred Deposit Loan Act, §§ 31-1-701 to -729, MCA, (the Act) in 1999. The Act's purpose statement provides the legislature's intent "to protect consumers who enter into short-term, high-rate loans with lenders from abuses that occur in the credit marketplace when the lenders are unregulated." Section 31-1-702, MCA. The Act applies to "deferred deposit lenders and to persons who facilitate, enable, or act as a conduit for persons making deferred deposit loans." Section 31-1-704(1), MCA.

¶13 The 2009 legislature made amendments to the Act that went into effect October 1, 2009. Mont. Sen. 54, L. 2009, Ch. 81, Sec. 6 (March 25, 2009). For example, the 2009

legislature amended § 31-1-722(3), MCA, to include that "any collection agency acting as an agent of a licensee, as a holder in due course of a licensee, or under an agreement with a licensee" may not collect bad check penalties. *Id*. Montana voters approved additional proposed changes to § 31-1-722, MCA, on November 2, 2010. Sec. 6, I.M. No. 164 (approved Nov. 2, 2010). Crasco received the three payday loans in 2009 before these changes to § 31-1-722, MCA, went into effect. The parties agree that the 2007 version of § 31-1-722, MCA, applies. We apply § 31-1-722, MCA, as it existed when Crasco entered the payday loan agreements.

¶14 The Act prohibits a payday lender from charging any interest, fees, or charges except those specifically provided in § 31-1-722, MCA. Section 31-1-722(1), MCA. Payday lenders can charge only one fee of $30 for each check returned for insufficient funds. Section 31-1-722(3), MCA (2007). A payday lender may not collect a bad check penalty for an insufficient funds check. *Id.*

¶15 Section 27-1-717, MCA, defines the damages that a party can recover from the drafter of an insufficient funds check. The payee or assignee of a bad check can recover the value of the check, an additional $30 service fee, and, possibly, damages not to exceed $500. Section 27-1-717(2)-(3), MCA. Section 31-1-722(3), MCA, prohibits Crasco's payday lenders from collecting the bad check penalties. Credit Service nevertheless charged Crasco with the bad check penalties. Credit Service interpreted the Act not to apply to collection agencies to whom payday lenders assign their interests in bad checks.

5

¶16 Crasco argues that the limitation on bad check penalties in § 31-1-722(3), MCA (2007), should apply to Credit Service as well. Crasco contends that a collection agency cannot obtain greater rights under the assignment of the debt than that of the payday lender. We agree that payday lenders cannot make an end run around the limitations in § 31-1-722(3), MCA (2007), simply by assigning the insufficient funds checks to a collection agency.

¶17 An assignee of contract rights generally stands in the shoes of the assignor. *Massey-Ferguson Credit Corp. v. Brown,* 173 Mont. 253, 256, 567 P.2d 440, 441-42 (1977). The assignee obtains no greater rights against the account debtor than the assignor. *Id.* Moreover, the Act itself restricts a payday lender from using "any device or agreement that would have the effect of charging or collecting more fees, charges, or interest than those allowed" by the Act. Section 31-1-723(6), MCA.

¶18 Credit Service argues that a party can assign greater rights than the party possesses. Credit Service provides as examples a holder in due course of a negotiable instrument, a buyer in the ordinary course of business, and a bona fide purchaser for value of real estate. Credit Service cites no legal authority for its assignment of greater rights argument and fails to explain why the Court should adopt the theory based on the three examples provided.

¶19 We disagree, regardless, that a payday lender can assign greater rights to a collection agency than the payday lender itself can enforce. Section 31-1-715(9), MCA, clearly states that "the holder or assignee of any check written by a consumer in connection with a deferred deposit loan takes the instrument subject to all claims and defenses of the

6

consumer." Crasco's defenses included the protection against bad check penalties when she entered the three payday loan agreements. Section 31-1-722(3), MCA (2007). Credit Service took the payday loan checks subject to Crasco's defense that bad check penalties could not be assessed against payday loans.

¶20 Credit Service argues that § 31-1-704(2)(b), MCA (2007), exempts collection agencies from complying with the Act. Section 31-1-704(2)(b), MCA (2007), states that the Act did not apply to a "collection agency" that had "entered into an agreement" with a payday lender "for the collection of claims owed or due" the payday lender. The legislature deleted this collection agency exemption in 2009. Section 31-1-704, MCA.

¶21 Neither party contests that Credit Service constitutes a "collection agency" that has "entered into an agreement" with a payday lender. Credit Service argues that our reading of § 31-1-704(2)(b), MCA (2007), should end there. Credit Service argues that we should declare the Act wholly inapplicable to collection agencies. We disagree. Credit Service's interpretation fails to give effect to the remaining words in § 31-1-704(2)(b), MCA (2007).

¶22 Section 31-1-704(2)(b), MCA (2007), exempts only a collection agency that has entered an agreement with a payday lender "for the collection of claims owed or due or asserted to be owed or due the [payday] lender." Bad check penalties authorized under § 27-1-717(3), MCA, may never be "owed or due or asserted to be owed or due" to payday lenders. Section 31-1-722(3), MCA (2007). The exemption for collection agencies contained in § 31-1-704(2)(b), MCA (2007), extended only to those collection agencies seeking "collection of claims owed or due" to payday lenders. Credit Service lost its exempt

7

status when it pursued bad check penalties that clearly cannot be collected by a payday lender itself. Section 31-1-722(3), MCA (2007).

¶23 Section 31-1-704(2)(b), MCA (2007), creates a limited exemption "for the collection of claims owed or due … the [payday] lender," not the unqualified exemption desired by Credit Service. This interpretation of the Act's exemption gives effect to all of its words. *Montco v. Simonich,* 285 Mont. 280, 287, 947 P.2d 1047, 1051 (1997). A collection agency operating within the limitations of the plain language of the exemption continues to benefit from exemption from licensing, fee, and reporting requirements, as well as other regulatory protections, of the Act. A different interpretation would permit a payday lender to circumvent the Act simply by setting up a sister corporation that collects all of its bills under the guise of a separate "collection agency." Any broader interpretation fails to give effect to all of the language in the statute and frustrates the Act's purpose "to protect consumers" who enter into payday loans.

¶24 The Yellowstone County Justice Court also granted Crasco penalties, costs, and fees under § 31-1-724(3), MCA. Section 31-1-724(3), MCA, provides a consumer with remedies against a person who has "intentionally violated" the Act. The remedies apply to licensees and unlicensed persons. Section 31-1-724(1), MCA. The remedies include costs, attorney fees, and a $1000 penalty for each violation. Section 31-1-724(3), MCA.

¶25 The District Court did not review the award of penalties, costs, and fees. We remand to the District Court to determine in the first instance whether Credit Service's illegal pursuit of the bad check penalties constituted an intentional violation of the Act that justifies the

8

Justice Court's award of penalties, costs, and fees to Crasco. We note that Credit Service's incorrect interpretation of the exclusion provision, or its hope that this Court would interpret the Act's provisions in a manner that permitted its illegal collection practices, will not serve as a defense that it did not act intentionally. Ignorance of the law provides no excuse for its violation. *Wiard v. Liberty N.W. Ins. Corp.,* 2003 MT 295, ¶ 32, 318 Mont. 132, 79 P.3d 281.

¶26 We remand to the District Court to determine whether Credit Service intentionally violated the Act in contravention of § 31-1-724, MCA. If so, the District Court must determine the amount of penalties, costs, and attorney fees awardable to Crasco.

¶27 Reversed and remanded.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON