FILED

August 4 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0602

DA 14-0602

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 225

_____

dck WORLDWIDE HOLDINGS INC.,

Cross-Claim Plaintiff and Appellee,

v.

CH SP ACQUISITION LLC,

Cross-Claim Defendant and Appellant.

_____

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 09-1023 AX
Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Randy J. Cox, Thomas J. Leonard, Boone Karlberg P.C.; Missoula,
Montana

For Appellee:

Dorie Benesh Refling, Jessica Penkal Hodges, Benjamin L. Refling,
Refling Hodges Law Group PLLC; Bozeman, Montana

Kellie M. Sironi, Attorney at Law; Billings, Montana

_____

Submitted on Briefs: May 27, 2015
Decided: August 4, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     CH SP Acquisition LLC (CHSP) appeals from an order entered by the Eighteenth Judicial District Court, Gallatin County, granting summary judgment in favor of dck Worldwide Holdings, Inc. (Worldwide).  We reverse and remand for entry of summary judgment in favor of CHSP.

¶2     We address the following issues on appeal:

¶3     *1.  Did the District Court err by concluding that the unpaid portion of the contractor's fee was lienable as a matter of law?*

¶4     *2.  Did the District Court err by concluding that the subcontractor's fee was lienable as a matter of law?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶5     On August 24, 2007, Dick Construction Company (Dick), predecessor in interest to Worldwide, entered into a cost-plus contract with Spanish Peaks Lodge, LLC (Spanish Peaks) to serve as the general contractor for the construction of Spanish Peaks Lodge Resort (Resort) near Big Sky.  Pursuant to the contract, Spanish Peaks was to reimburse Dick for the actual costs of construction plus a contractor's fee of 5% of the total cost of the project and 5% on self-performed work.  The parties capped the total price for the Resort at $130,483,926, which resulted in a contractor's fee of $6,915,195.  Under the terms of the contract, Spanish Peaks was to pay the contractor's fee in installments as the work progressed, and Dick was entitled to the entire fee in the event the contract was terminated, based upon an estimate of the cost of the work that remained to be completed.  To bankroll the project, Spanish Peaks procured financing through Citigroup Global

2

Markets Realty Corp. (Citigroup), predecessor in interest to CHSP, and Citigroup took a $130 million mortgage against all of Spanish Peaks' development property, including the Resort.

¶6      In the fall of 2008, during the economic recession, Spanish Peaks suspended work and ceased making the requisite payments to Dick in breach of the parties' contract. By that point, Dick had invoiced approximately $21 million to Spanish Peaks in materials and labor and had been paid $1,438,968 of the total $6,915,195 contractor's fee. Spanish Peaks thus owed Dick the unpaid portion of the contractor's fee, or $5,476,277, under the terms of the contract. Spanish Peaks thereafter filed for Chapter 7 bankruptcy, and the Resort was never finished.

¶7      Dick filed a construction lien claiming the amount of $10,500,000. Included in the lien was the unpaid portion of the contractor's fee as well as the amount Dick owed to a subcontractor, Allied Steel, Inc. (Allied Steel), in the amount of $661,767. Allied Steel also filed its own construction lien for unpaid services and materials.

¶8      Allied Steel initiated this action against Spanish Peaks, Dick, and Citigroup seeking foreclosure of its construction lien, a money judgment, and a determination of priority.[1] Dick filed a cross-claim against Citigroup likewise seeking a determination of priority.

¶9      Allied Steel, Spanish Peaks, and Dick entered into a settlement agreement. The agreement provided a full and final settlement of Allied Steel's claims against Dick and Spanish Peaks. The agreement provided for Spanish Peaks to pay $500,000 to Dick and

_____

[1] Numerous other parties had also filed liens on the project and were named in the action.

3

for Dick to then pay the $500,000 to Allied Steel. In consideration for the compensation, Allied Steel released and relinquished all claims against Dick and Spanish Peaks. Allied Steel assigned all of its claims against Dick and Spanish Peaks to Dick. Allied Steel was then dismissed from the action.

¶10 Thereafter, Worldwide purchased the assets of Dick, including Dick's lien, at a public auction and CHSP purchased the mortgage. Consequently, Worldwide and CHSP became the real parties in interest to this action.

¶11 On April 24, 2013, the District Court issued an order concluding that Worldwide's construction lien had priority over CHSP's mortgage. However, the court noted "the dollar amount that is the basis of the lien is legitimately in dispute." The court granted summary judgment with respect to priority, but denied summary judgment with respect to the amount of Worldwide's lien.

¶12 On November 5, 2013, CHSP and Worldwide reached a partial settlement, memorialized in a second settlement agreement. Under the terms of the second agreement, Worldwide was paid $2.7 million, and Worldwide released all claims against CHSP, except for its claims concerning its right to lien the unpaid contractor's fee and the amount of Allied Steel's subcontractor's lien. On those issues, Worldwide and CHSP filed cross-motions for summary judgment. The District Court granted Worldwide's motion, concluding that the unpaid portion of the contractor's fee and the subcontractor's fee were both secured by Worldwide in the amount of $5,476,277 and $661,767, respectively, and lienable as a matter of law.

¶13 CHSP appeals.

4

## STANDARD OF REVIEW

¶14 We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as the district court. *Steichen v. Talcott Props.*, LLC, 2013 MT 2, ¶ 7, 368 Mont. 169, 292 P.3d 458. Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

¶15 The district court's interpretation of a statute is a matter of law, which we review de novo to determine whether the court's interpretation is correct. *State v. Weaver*, 2008 MT 86, ¶ 10, 342 Mont. 196, 179 P.3d 534.

## DISCUSSION

¶16 *1. Did the District Court err by concluding that the unpaid portion of the contractor's fee was lienable as a matter of law?*

¶17 A construction lien, formerly known as a mechanic's lien, is "'a creature of statute, remedial in nature, with its foundation in equity and natural justice.'" *Matos v. Rohrer*, 203 Mont. 162, 174, 661 P.2d 443, 450 (1983) (quoting *Beck v. Hanson*, 180 Mont. 82, 87, 589 P.2d 141, 144 (1979)). Under the lien statutes, "it is not the contract for erecting or repairing the building which creates the lien, but it is the use of the materials furnished and the work and labor expended by the contractor . . . ." *Smith v. Gunniss*, 115 Mont. 362, 375, 144 P.2d 186, 189 (1944) (citing *Van Stone* v. *Stillwell & Bierce Mfg. Co.*, 142 U.S. 128, 134, 12 S. Ct. 181, 183); *see also Hammer v. Chapin*, 256 F. Supp. 818, 819-820 (D. Mont. 1966).

5

¶18 The statutes governing construction liens are codified in Title 71, chapter 3, part 5 of the Montana Code Annotated. Section 71-3-526(1), MCA, entitles a "person who has furnished services or materials pursuant to a real estate improvement contract" to a construction lien for the "unpaid part of the person's contract price." In turn, § 71-3-522, MCA, defines "contract price" as the "amount agreed upon by the contracting parties for performing services and furnishing materials covered by the contract, increased or diminished by: (i) the price of change orders or extras; (ii) any amounts attributable to altered specifications; or (iii) a breach of contract, including but not limited to defects in workmanship or materials."

¶19 CHSP challenges the District Court's conclusion that the unpaid portion of the contractor's fee was lienable. CHSP offers that it is an undisputed fact that the unpaid fee represents compensation for "work not actually performed," and argues that only "profit and overhead on *work actually performed*" is lienable under § 71-3-522, MCA, reasoning that this interpretation is "consistent with the underlying historical purpose of the construction lien statutes to compensate those who have made actual improvements to real property." (Emphasis in original.) [2]

¶20 Worldwide counters that CHSP misinterprets the construction lien statutes and mischaracterizes the unpaid fee. Citing the language in § 71-3-526, MCA, entitling a

---

[2] While § 71-3-522, MCA, speaks in terms of "services" and "materials," CHSP makes no argument that *profits* are beyond the scope of the statute. Instead, CHSP presupposes that profits are included within the terms "services" and "materials" and thus are properly lienable so long as the services and materials concomitant with the profits are lienable, although this is not explicitly stated within the text of § 71-3-522, MCA. We note that at least one authority takes the position that "[o]n a cost-plus contract, only the cost of labor and materials qualifies for lien purposes because the statute makes no provision for profits on this type of contract." 56 C.J.S. *Mechanics' Liens* § 198 (2007). Nonetheless, we address the issues here as argued.

contractor "to a lien for the unpaid part of the person's contract price," Worldwide argues that the law "unambiguously entitles [it] to secure its entire unpaid contract price with its lien." Worldwide offers that the "unpaid part of the parties' contract price dictates the lien amount" and that "the contract price is controlling." Worldwide also argues that, contrary to CHSP's statement that it is undisputed that the unpaid contractor's fee was for unperformed work, Worldwide has "never agreed the Fee was for work not performed," and that the record establishes that the fee compensated Dick for the services it did provide on the project.

¶21 We construe a statute by "reading and interpreting the statute as a whole, 'without isolating specific terms from the context in which they are used by the Legislature.'" *State v. Triplett*, 2008 MT 360, ¶ 25, 346 Mont. 383, 195 P.3d 819 (quoting *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003). "Statutory construction is a 'holistic endeavor' and must account for the statute's text, language, structure, and object." *Stockman Bank of Mont. v. Mon-Kota, Inc.*, 2008 MT 74, ¶ 31, 342 Mont. 115, 180 P.3d 1125 (citing *State v. Heath*, 2004 MT 126, ¶ 24, 321 Mont. 280, 90 P.3d 426) (internal brackets omitted). The duty of this Court is to "read and construe each statute as a whole" so that we may "give effect to the purpose of the statute." *Triplett*, ¶ 25 (internal quotations omitted).

¶22 In light of Worldwide's argument that it is entitled to broadly claim "the entire contract price," it should first be clarified that the lien statutes permit claims for "the amount agreed upon by the contracting parties for performing *services* and furnishing *materials* covered by the contract." Section 71-3-522(3)(a), MCA (emphasis added). By

7

using this language, the Legislature was authorizing liens only for the unpaid amounts of services and materials provided under a construction contract, and not other items. While most construction contracts may primarily provide for services and materials, it is clear that the Legislature did not tie authority to lien to the total amount of the construction contract, but to the unpaid amounts for services and materials provided therein.

¶23 Further, CHSP's argument that construction liens are limited to services that are actually performed and materials that are actually furnished is well supported by the text, structure, and purpose of the lien statutes. As noted above, § 71-3-522(3)(a), MCA, defines "contract price" as the amounts the contracting parties have agreed to "for *performing* services and *furnishing* materials." Section 71-3-526, MCA, permits a person to lien the "unpaid part" of the contract price, but "subject to the provisions of 71-3-524." In turn, § 71-3-524, MCA, limits lienable materials to those that: (1) "are supplied with the intent that they be used in the course of construction of or incorporated into the improvement"; and (2) are "incorporated in the improvement or consumed as normal wastage in construction operations"; "specifically fabricated for incorporation into the improvement"; or "used for the construction or operation of machinery or equipment used in the course of construction and not remaining in the improvement." Thus, § 71-3-524, MCA, expressly prohibits a contractor from including within its lien amounts for a claim of materials that the contractor has not furnished.

¶24 Further, the requisite procedures for perfection of a construction lien contemplate work the contractor has completed. Section 71-3-532, MCA, governing the content of the notice of right to claim, provides: "The notice of the right to claim a lien must be in

8

writing and state that it is a notice of a right to claim a lien against real estate for services or materials *furnished* in connection with improvement of the real estate." (Emphasis added.) Likewise, § 71-3-535(3)(e), MCA, the filing requirement provision, requires that a person provide "a description of the services or materials *provided*." (Emphasis added.)

¶25 Lastly, the purpose of the construction lien is to protect the equitable interest of those whose labor or materials have enhanced the value of the property. 56 C.J.S. *Mechanics' Liens* § 3 (2007). They are "designed to give security to those who, by their labor, skill, and materials, add value to property." *Davis v. Alvord*, 94 U.S. 545, 547, 24 L. Ed. 283, 284 (1877). We have explained that: "Our lien statutes are remedial. They are for the express purpose of providing for the payment of the claims of builders, mechanics and materialmen out of the property to which their work and material have contributed an increased value." *Smith v. Gunniss*, 115 Mont. 362, 376, 144 P.2d 186, 189 (1943); *see also Van Stone*, 142 U.S. at 136, 12 S. Ct. at 183 ("it is *the use of the materials furnished and the work and labor expended* by the contractor, whereby the building becomes a part of the freehold, that gives the material man and laborer his lien under the statute") (emphasis added). Thus, the purpose of the construction lien statutes is advanced only so far as the statutes allow a person to lien for the amount the person has contributed to the property, and it would be wholly inconsistent with the statutes' purposes to permit a person to lien for uncompleted work.

¶26 CHSP concedes that Worldwide could lien for the contractor's fee on work done prior to termination of the contract. Further, CHSP is correct that, even though Worldwide is contractually entitled to payment of a contractor's fee based upon a

reasonable estimate of the cost of the work that would have been performed, the construction lien statutes do not permit Worldwide to claim a lien for a fee related to such unperformed work.

¶27 Worldwide argues that it never conceded that the unpaid contractor's fee represented compensation for unperformed work, and that the fee should be considered compensation for performed work. Worldwide offers that "[t]here is, in fact, no evidence that the reasonable value of all the services and materials Dick provided does not include the Fee."

¶28 We conclude that the record establishes the opposite position. The construction contract between Dick and Spanish Peaks provided that, in the event of termination, the calculation of the contractor's fee would include "a reasonable estimate of the Cost of the Work for *the Work not actually completed*." (Emphasis added.) Thus, under the plain terms of contract, the unpaid fee that Worldwide is now seeking to lien was calculated based upon work "not actually completed." Dick's counsel, Ray Crothers, admitted this was the correct interpretation of the contract. When asked whether "the 5 and-a-half million included in Dick's construction lien is for the contractor's fee on work not actually completed," Crothers responded, "That's correct." In District Court, Worldwide conceded that "Dick agreed to take a Contractor's Fee of only 5% because the Spanish Peaks Contract allowed for it to still receive the Fee on its unperformed work in the event the Spanish Peaks Contract was terminated." We conclude that there is no dispute of fact that the unpaid portion of the contractor's fee represents compensation for work that was not completed.

10

¶29 In reaching these conclusions, we underscore the difference between what Dick could have recovered in a breach of contract action against Spanish Peaks, and what recovery is permissible in a construction lien situation. Under the language of the cost-plus contract between Dick and Spanish Peaks, Dick was entitled to the entire contractor's fee in the event the contract was terminated. Once Spanish Peaks went into bankruptcy, however, Dick was compelled to pursue foreclosure of its construction lien against Citigroup, a non-party to the construction contract.

¶30 For the reasons stated herein, we hold the District Court erred by holding that the unpaid contractor's fee claimed by Worldwide was properly lienable under the lien statutes.

¶31 *2. Did the District Court err by concluding that the subcontractor's fee was lienable as a matter of law?*

¶32 CHSP argues the District Court also erred by holding that the subcontractor's fee remained lienable after Allied Steel settled its claim. Worldwide counters that it is entitled to lien the subcontractor's fee on two grounds: first, as assignee of the lien and, second, as a general contractor claiming its subcontractor's lien as part of its own contract price.

¶33 "This Court has long held that an assignment does not create a new lien." *Watts v. HSBC Bank United States Tr.*, 2013 MT 233, ¶ 11, 371 Mont. 295, 308 P.3d 57. Instead, an assignee "stands in the shoes of the assignor." *Watts*, ¶ 14 (quoting *Credit Serv. Co. v. Crasco*, 2011 MT 211, ¶ 17, 361 Mont. 487, 264 P.3d 1061). "The assignee obtains no greater rights against the account debtor than the assignor." *Credit Serv.*, ¶ 17. Under the

terms of the settlement agreement, Allied Steel received compensation for its claim, and, in consideration, Allied Steel relinquished all claims against Spanish Peaks, thereby extinguishing its construction lien. Thus, Worldwide cannot claim a construction lien by way of assignment because Allied Steel had no lien to assign.

¶34 Worldwide next argues that, as the general contractor, it appropriately included the subcontractor's fee in its lien because Spanish Peaks owes Worldwide the debt under the contract. However, § 71-3-526(2), MCA, provides that a "person's lien is reduced by the sum of the liens of persons claiming construction liens through that person." Pursuant to the statute, Worldwide's lien must be reduced by the amount of Allied Steel's lien as Allied Steel is a person claiming a construction lien through it. Therefore, because Allied Steel settled its lien in full, Worldwide cannot, as a general contractor, include within its lien the amounts formerly owed to Allied Steel. We therefore conclude the District Court erred by holding the subcontractor's fee was lienable.

¶35 We hold that the District Court erred in granting summary judgment to Worldwide. We reverse the grant of summary judgment in favor of Worldwide and remand for entry of summary judgment in favor of CHSP on the two issues here presented.

/S/ JIM RICE

We concur:

/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON

12