FILED

10/04/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0103

DA 22-0103

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 192

SKYLINE CONSULTING GROUP,

> Plaintiff and Appellant,

v.

MORTENSEN WOODWORK, INC.,

> Defendant and Appellee.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-21-1215B
Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:

> Cherche Prezeau, Colin Phelps, Christensen & Prezeau, PLLP, Helena, Montana

> For Appellee:

> Ryan Lorenz, E.J. Guza & Associates, Bozeman, Montana

> James R. Artzer, Henner & Scarbrough, LLP, Atlanta, Georgia

Submitted on Briefs:  August 17, 2022

Decided:  October 4, 2022

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Skyline Consulting Group appeals an order entered by the Eighteenth Judicial District Court, Gallatin County, denying its Motion to Vacate and Set Aside Bond Substitution and Reinstate Construction Lien. We restate and address the following two issues:

> *1. Did the District Court err in concluding that Mortensen Woodwork, a subcontractor, could file a substitute bond when Montana law authorizes only a "contracting owner" to do so?*
>
> *2. Did the District Court err in concluding that Skyline Consulting Group waived its right to challenge the substitute bond by making alternative arguments in the parties' arbitration proceeding?*

We answer both issues affirmatively and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 This case concerns a dispute between two subcontractors who worked on the Spanish Peaks Lodge construction project near Big Sky, Montana. In 2019, Suffolk Construction, the general contractor for the project, subcontracted with Mortensen Woodwork. Suffolk agreed to pay Mortensen $5.8 million for custom architectural woodwork to go inside the Lodge. Mortensen, in turn, subcontracted with Skyline Consulting to install its custom woodwork.

¶3 By the fall of 2021, Skyline alleged that Mortensen owed it nearly $600,000 for unpaid labor and materials. Mortensen disagreed, contending that Skyline had abandoned the installation work. To ensure its payment, Skyline filed a construction lien against the

Spanish Peaks Lodge property with the intent to pursue foreclosure. In the lien, Skyline named the owner of the Lodge—SP Hotel Owner.

¶4 To keep the Lodge's title clear of liens, both Suffolk's contract with SP Hotel Owner and Mortensen's contract with Suffolk required Suffolk and Mortensen to remove any liens filed by subcontractors against the project. Suffolk accordingly directed Mortensen to "bond around" Skyline's lien. Mortensen secured a bond from a surety company for 150% of the amount Skyline claimed and petitioned the District Court to substitute the bond for the lien. The District Court did so, freeing up the Lodge's title.

¶5 Two days after the District Court's substitution, Skyline filed an answer to Mortensen in their separate arbitration proceeding. In its arbitration filing, Skyline asserted that Mortensen "'improperly filed a petition to substitute a bond for the construction lien'" and "inaccurately represented to the court that it was a 'contracting owner.'" Skyline requested to join SP Hotel Owner to the arbitration proceeding, especially "in the event [Mortensen's] bond substitution is declared invalid." Skyline also requested to join Intact Insurance, the surety that had issued Mortensen's bond, "which purports to be serve [sic] as substitution for [Skyline's] construction lien."

¶6 A week later, Skyline asked the District Court to reinstate its lien, arguing that Mortensen, a subcontractor, was not authorized to substitute a bond because Montana's construction lien laws allow only a "contracting owner" to do so. The District Court denied Skyline's request in a one-paragraph decision, concluding that Mortensen had "acted at the direction and as the agent of the Owner" and thus could substitute a bond for Skyline's lien.

3

## STANDARDS OF REVIEW

¶7     The interpretation of a statute is a matter of law, which we review de novo. *dck Worldwide Holdings v. CH SP Acquisition LLC*, 2015 MT 225, ¶ 15, 380 Mont. 215, 355 P.3d 724. We review for correctness a district court's legal conclusion about whether a party has waived a right. *VanDyke Constr. Co. v. Stillwater Mining Co.*, 2003 MT 279, ¶ 11, 317 Mont. 519, 78 P.3d 844.

## DISCUSSION

¶8     *1. Did the District Court err in concluding that Mortensen Woodwork, a subcontractor, could file a substitute bond when Montana law authorizes only a "contracting owner" to do so?*

¶9     Skyline argues that Mortensen was not permitted to file a bond in substitution for Skyline's construction lien because Mortensen was not a contracting owner. Mortensen responds that its substitute bond is valid because it filed the bond on behalf of and at the direction of the contracting owner.

¶10    Montana law provides that someone who furnishes labor or materials for a construction project may secure payment by claiming a lien against the property and pursuing foreclosure. Section 71-3-523, MCA. Once such a lien has been claimed, "the *contracting owner* of any interest in the property, whether legal or beneficial," may file a bond in substitution for the lien, clearing up the property's title while the payment dispute proceeds. Section 71-3-551(1), MCA (emphasis added). The term "contracting owner" is defined as "a person who owns an interest in real estate and who, personally or through an agent, enters into an express or implied contract for the improvement of the real estate."

4

Section 71-3-522(4)(a), MCA. Montana's construction lien laws list no other party who may substitute a bond besides a "contracting owner."

¶11 When considering the meaning of a statute, courts simply must "ascertain and declare" what is contained in the words of the statute. Section 1-2-101, MCA. We look to the statute's plain language, *Comm'r of Political Practices for Mont. v. Mont. Republican Party*, 2021 MT 99, ¶ 7, 404 Mont. 80, 485 P.3d 741, and cannot "insert what has been omitted." Section 1-2-101, MCA. Additionally, the procedural requirements of construction lien statutes "will be strictly construed." *Swain v. Battershell*, 1999 MT 101, ¶ 26, 294 Mont. 282, 983 P.2d 873.

¶12 The plain language of Montana's construction lien laws does not authorize general contractors (like Suffolk) or subcontractors (like Mortensen) to substitute bonds for liens. Sections 71-3-522, -551(1), MCA. It allows only contracting owners—those who own an interest in property and enter into a contract for its improvement—to do so. Montana law is notably different on this point. For example, the model Uniform Construction Lien Act explicitly authorizes parties other than contracting owners to substitute bonds for liens. Unif. Constr. Lien Act § 212 (1987) ("A construction lien does not attach to real estate . . . if the owner or the prime contractor has procured . . . a bond . . . ."). So do several of our sister states. *See, e.g.*, Alaska Stat. § 34.35.072 (2021) ("If the owner of the property . . . or a prime contractor or subcontractor disputes the correctness or validity of the claim of lien . . . the owner or contractor may record . . . a bond . . . ."); Cal. Civ. Code § 8424(a) (LexisNexis 2022) ("An owner of real property . . . or a direct contractor or subcontractor . . . that disputes the correctness or

5

validity of the claim may obtain . . . a lien release bond."); Wash. Rev. Code § 60.04.161 (2022) ("Any owner of real property subject to a recorded claim of lien . . ., or contractor, subcontractor, lender, or lien claimant . . . may record . . . a bond . . . .").

¶13   But Montana law, as it is currently written, allows only contracting owners to substitute bonds.  The Legislature passed the current statute permitting substitute bonds, § 71-3-551, MCA, in 1971.  It amended the statute in 1987 and again in 2007.  In drafting and amending, the Legislature never added parties, such as general contractors or subcontractors, who could file substitute bonds.[1]  Mortensen admittedly owns no interest in the Spanish Peaks Lodge.  Mortensen thus was not a contracting owner and not allowed to file a substitute bond.

¶14   Mortensen argues that we should allow it to substitute a bond for a lien because our case law indicates that the purpose of allowing substitute bonds is to allow properties to be free of liens while contract disputes play out.  *Total Indus. Plant Servs. v. Turner Indus. Grp.*, 2013 MT 5, ¶ 55, 368 Mont. 189, 294 P.3d 363 (discussing policy considerations).  While this may be so, Mortensen's argument is not persuasive because courts do not turn to policy arguments to aid interpretation when the statute's plain language is unambiguous.  *Small v. Bd. of Trs.*, 2001 MT 181, ¶¶ 21-22, 306 Mont. 199, 204, 31 P.3d 358.  *See also Stand Up Mont. v. Missoula Cty. Pub. Schs.,* 2022 MT 153, ¶ 25, 409 Mont. 330, 514 P.3d

---

[1] The parties point us to a 2000 non-cite opinion alerting the Legislature to this limit.  *Petri v. James Talcott Constr., Inc.*, No. DA 00-168, 2000 MT 355N, ¶ 14, 2000 Mont. LEXIS 341. Pursuant to Section I, Paragraph 3(c)(ii) of the Montana Supreme Court Internal Operating Rules, parties may not rely on unpublished memorandum opinions except in very narrow circumstances not applicable here.

1062 ("'When the plain language of the statute is clear, no other means of interpretation are necessary or proper . . . .'") (quoting *State v. Hicks*, 2013 MT 50, ¶ 19, 369 Mont. 165, 296 P.3d 1149).

¶15 Mortensen also argues that our 2011 decision, *Dick Anderson Construction, Inc. v. Monroe Property Co.*, controls the outcome in this case. 2011 MT 138, 361 Mont. 30, 255 P.3d 1257. We disagree. In that case, a construction company contracted with a shell entity and eventually sought to enforce a lien against the property on which it had worked. The property owner argued that it was not a contracting owner whose property could be reached by a lien because it had not contracted personally with the construction company— the shell entity had. The shell entity and the property owner were controlled by the same person. Montana law defines a contracting owner as "a person who owns an interest in real estate and who, personally or through an agent, enters into an express or implied contract for the improvement of the real estate." Section 71-3-522(4)(a), MCA. We held that the property owner was a contracting owner because it owned an interest in the property and had acted through its agent, the shell entity, when contracting with the construction company. *Dick Anderson Construction*, ¶ 27. In this case, however, Mortensen did not own an interest in the Spanish Peaks Lodge and thus cannot be a contracting owner under Montana law.

¶16 Finally, Mortensen argues that it was acting as an agent of the property owner and thus was allowed to substitute the bond for the lien. Skyline responds that agency principles are applied inappropriately in this instance and that Mortensen in any event failed to establish an agency relationship with the property owner.

7

¶17 Lien laws are statutory in nature, with "no likeness at common law or in equity." II Garrard Glenn, *Mortgages, Deeds of Trust, and Other Security Devices as to Land* § 351 (1943); *see also dck Worldwide Holdings*, ¶ 17 ("A construction lien . . . is a 'creature of statute . . . .'") (quoting *Matos v. Rohrer*, 203 Mont. 162, 174, 661 P.2d 443, 450 (1983)). We are therefore reluctant to incorporate common law agency principles into the statutory definition of "contracting owner." The Montana Legislature has explicitly authorized agents, in addition to contracting owners, to perform certain acts under the construction lien laws. For example, a different section in the construction lien laws describes the process for filing a notice of completion for a project. It states that "written acceptance by the contracting owner, *the contracting owner's agent*, or the representative of the building" constitutes completion. Section 71-3-533(2)(a), MCA (emphasis added). But the section concerning substitute bonds, § 71-3-551, MCA, contains no language authorizing an agent of a contracting owner to substitute a bond.

¶18 What is more, Mortensen points to no record support that it was acting as an agent of the property owner. "Integral to any agency relationship are the elements of consent and control." *Wolfe v. Schulz Refrigeration*, 188 Mont. 511, 517, 614 P.2d 1015, 1018 (1979). Mortensen had a contractual relationship with the general contractor, Suffolk; it had no contractual relationship with the property owner. All rights, obligations, and remedies set forth in the subcontract were between Mortensen and Suffolk only, with the exception that the subcontract obligated Mortensen to name both the Owner and Suffolk as additional insureds on its policies. Mortensen agreed under the subcontract "to be bound to the Contractor with respect to the Work by all the terms of the Contract Documents" and

8

"to assume to the Contractor with respect to the Work, all obligations and responsibilities which the Contractor has assumed to the Owner . . . except to the extent that provisions in the Contract Documents by law are applicable only to Contractor and cannot be passed down to Subcontractor." There is no language in the subcontract suggesting that the subcontractor could act on behalf of the Owner in any capacity. Nor is the contract between the Owner and Suffolk in the record. At any rate, it was Suffolk, not the property owner, who directed Mortensen via email to bond around the lien. Mortensen's contract with Suffolk, requiring Mortensen to bond around liens filed by subcontractors, does not dictate a different outcome in the face of contrary statutory language.[2]

¶19 We conclude that Montana's construction lien laws did not permit Mortensen to substitute a bond for Skyline's lien.

¶20 *2. Did the District Court err in concluding that Skyline Consulting Group waived its right to challenge the substitute bond by making alternative arguments in the parties' arbitration proceeding?*

¶21 Mortensen argues that Skyline waived its right to challenge Mortensen's substitute bond in District Court when, in an earlier arbitration filing, Skyline named the surety issuing the bond and said that it would seek to collect on the bond.

---

[2] Section 28-10-105(2), MCA, provides, "Every act that, according to this code, may be done by or to any person may be done by or to the agent of the person for that purpose unless a contrary intention clearly appears." Subsection (1) of the same statute further excepts from an agent's authority acts "to which the principal is bound to give personal attention." Skyline argues that § 71-3-551, MCA, by its plain language, binds the property owner's personal attention to construction liens for purposes of bonding around them. For its part, Mortensen does not cite § 28-10-105, MCA, or argue for its application in this case. Given Mortensen's lack of an agency relationship with the owner, together with the Legislature's explicit definition of a contracting owner and its exclusion of agency language in the substitute bond section that it included elsewhere in the same part, § 28-10-105, MCA, does not affect our analysis in this case.

9

¶22 This Court has held that to establish waiver, "the party asserting waiver must demonstrate the other party's knowledge of the existing right, acts inconsistent with that right, and resulting prejudice to the party asserting waiver." *VanDyke Constr. Co.*, ¶ 15. Montana Rule of Civil Procedure 8(d)(2) allows parties to make alternative arguments in their pleadings.

¶23 Mortensen failed to establish that Skyline acted inconsistently with its right to challenge the substitute bond in District Court when it filed an answer in the parties' arbitration proceeding. Skyline's arbitration filing explicitly contested the legality of Mortensen's substitute bond at least three times. First, it asserted that Mortensen "improperly filed a petition to substitute a bond" and "inaccurately represented to the court that it was a 'contracting owner.'" Second, in its request to join the Lodge owner as a party to the arbitration proceeding, Skyline reasoned that the owner should be joined "in the event [Mortensen's] bond substitution is declared invalid." And third, in its request to join the surety company, Skyline stated that the bond that the company issued "*purports* to be serve [sic] as substitution" for Skyline's lien. (Emphasis added.) Skyline's statements were consistent with its challenge of the validity of Mortensen's substitute bond in the District Court. To the extent that Skyline sought to collect upon the bond and thus join the surety company that issued the bond, it made these arguments in the alternative. The District Court thus incorrectly concluded that Skyline had waived its right to challenge the substitute bond.

**CONCLUSION**

¶24   The District Court erred in concluding that Montana law authorized Mortensen Woodwork, a subcontractor, to substitute a bond for Skyline Consulting Group's construction lien.  Skyline did not waive its right to challenge the substitute bond in the parties' separate arbitration proceeding.  We reverse and remand for the District Court to vacate the improperly filed bond and reinstate Skyline's lien.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON