FILED

05/09/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0338

DA 16-0338

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 109

VINTAGE CONSTRUCTION, INC.,

      Plaintiff, Appellee, and Cross-Appellant,

    v.

JENNIFER A. FEIGHNER and ROBERT C. MYERS,

      Defendants, Appellants, and Cross Appellees.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV 14-382
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

      Robert C. Myers, self-represented, Hamilton, Montana

    For Appellee:

      Richard A. Weber, Richard A. Weber, P.C., Hamilton, Montana

      Amanda Z. Duman, Nicholas J. Pagnotta, Williams Law Firm, Missoula,
Montana

Submitted on Briefs:  January 11, 2017

Decided:  May 9, 2017

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    After litigating a home construction contract dispute, Defendant Appellants Robert C. Myers and Jennifer Feighner (together, Myers[1]) appeal the decision following a bench trial at the Twenty-First Judicial District Court that awarded contractual damages to Plaintiff Appellee Vintage Construction (Vintage) and dismissed Myers' counterclaims for damages and attorney's fees.  Vintage appeals the District Court's decision to deny its right to foreclose its construction lien placed on Myers' real property and the court's decision to deny Vintage attorney's fees pursuant to the lien foreclosure statute, § 71-3-124, MCA. We affirm the District Court's decision to award Vintage damages and dismiss Myers' counterclaims, but reverse and remand the court's decision to deny Vintage the right to foreclose and collect attorney's fees, based on our reasoning and disposition of the following issues:

*1. Whether the District Court erred by awarding contractual damages to Vintage.*

*2. Whether the District Court erred as a matter of law by denying Vintage an award of attorney's fees and the right to foreclose upon its lien.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶2    Robert Myers is an attorney.  He and his wife Jennifer Feighner, M.D., borrowed funds from U.S. Bank to construct a million-dollar home in Ravalli County.  To facilitate construction, Myers hired two successive contractors.  The second contractor, Vintage

---

[1] Robert Myers is both a party and counsel for defendants.  Solely for ease of reading, Myers and Feighner are abbreviated as Myers.

Construction, agreed to finish the job after the first contractor quit, following a disagreement with Myers over project costs and the filing of a construction lien. Myers settled the dispute and resolved the lien with the first contractor. The dispute and lien between Myers and Vintage, however, led to litigation and this appeal.

¶3 This appeal began as a Complaint to Foreclose a Construction Lien in August of 2014. Following a bench trial, the District Court determined in its Findings of Fact, Conclusions of Law and Order that, sometime between February and April of 2013, Myers and Vintage had "entered into some form of a construction contract," premised upon verbal promises and Vintage's written bid proposal. Vintage was to complete the unfinished construction of the home left undone by the first contractor, along with related improvements. Myers' obligation was to pay the costs of labor and materials, plus a 10% contractor's fee to Vintage, based upon actual costs. There was no signed writing between the parties, only Vintage's written estimate for $398,880.46. This overall estimate formed the basis of the contract between the parties and the categories of construction work Vintage agreed to oversee. The overall estimate included masonry/stonework and driveway work as two of its categories. Sisson Stone (Sisson) provided an estimate of $44,518 to complete the masonry and stonework. Gabe Leonardi (Leonardi) estimated $40,888 to complete the driveway. Vintage and Myers agreed that the 10% contractor's fee would apply to both the Sisson and Leonardi estimates. Vintage intended for these figures to be somewhat variable in order to address the unexpected costs likely to arise when taking over a project "in the middle." Vintage included language to that effect in its

3

estimates. Vintage's language proved prescient after the discovery of a rattlesnake den on the property siphoned away $32,712 from the driveway budget for abatement measures, including a "snake fence." Consequently, Leonardi later agreed to reduce his driveway estimate downward to $9,000.

¶4 Vintage began supplying materials and labor for the project on February 28, 2013. As construction neared completion in September of 2013, Myers asked Vintage to provide a current estimate for final completion costs so that Myers could finish the financing arrangements with U.S. Bank. Vintage gathered bids from its subcontractors and delivered a completion estimate of $91,107.50 to Myers and U.S. Bank. The completion estimate included stonework and masonry costs from Sisson, but with a hidden problem. In April of 2013, Vintage had relied on Sisson's estimate of $44,518 to complete the stonework and masonry. Vintage, relying again in September on the original estimate Sisson made in April, believed that the accordant amount for the remaining masonry and stonework completion would be $24,059. But by the time Sisson actually began working in the summer of 2013, the masonry parameters of the project had changed—unbeknownst to Vintage or Myers. When he wrote the completion estimate, Sisson believed that financial constraints were a problem for Myers. Sisson thus created the September completion estimate believing that Myers could not afford to have each stone individually sealed and could only afford to pay for 757 square feet of additional work. As a result, Sisson's September completion estimate was lower than Vintage's projection, which was based on Sisson's original April estimate: Sisson's September completion estimate projected only

4

$15,300 in completion costs, not $24,059. Neither Vintage nor Myers realized that Sisson's September completion estimate was low in part because it had contemplated only 757 square feet of remaining work. Even though he did not know the reason why, Vintage's president, Doug Banks (Banks), did recognize that Sisson's bid was too low to cover what remained on the project. Banks cautioned Myers that the $15,300 completion estimate provided by Sisson was lower than it should have been and that Myers could have to pay the additional $9,000 to finish the masonry and stonework. Myers chose to not heed the warning, stating, "we'll just see how it falls out[,]" and directed Banks to accept the lower estimate from Sisson. Sisson and his crew later walked off the job, telling Banks, "I'm not working for that man [Myers] again. Ain't gonna happen."

¶5      After Sisson left the job, stonework and masonry at the site remained unfinished. Sisson had ordered a pallet of Bighorn stone, personally selected by Myers, that was delivered to the site for a cost of $2,973, which Vintage paid. Myers asked Banks if Myers could act as the general contractor for the balance of the stonework so that they could save the 10% in contractor's fees. Banks agreed to the contractor fee reduction, but did not agree to any additional deduction off of the amount Myers owed Vintage. Myers hired Buckie Brawley to complete the stonework. Brawley used the Bighorn stone already onsite to complete the work, but Myers never paid Vintage for the pallet. Myers paid Brawley $4,310 to complete the stonework and masonry and was satisfied with Brawley's work, but not Sisson's. Brawley had stacked his stones using mortar joints, which he testified work just as well as individually sealing each stone, but disparaged "dry stacking." Brawley

5

testified that he will not warrant a dry stacking job because it lacks the proper mortar joints and will not fare well in the elements. Myers complained that Sisson's stonework had no grout or few joint walls and that the stone appeared to be dry stacked.

¶6     Myers sent Vintage a letter on December 12, 2013, detailing the balances they refused to pay Vintage. These disputed balances constitute the bulk of what Vintage claimed as damages, and upon which the construction lien was based. When Myers later met with Robin Barker, bookkeeper for Vintage, Myers refused to acknowledge a 10% contractor's fee due on the $10,260 paid to Leonardi for roadwork. Myers contended Leonardi was their direct hire, despite Leonardi's bid for $40,888 being part of Vintage's original contract estimate. Leonardi's driveway work, however, was never discussed for direct hire release from the contract and was never released from the 10% contractor's fee. Similarly, although Vintage had agreed that Myers could hire Brawley to complete the masonry work and avoid the 10% contractor's fee, Vintage never agreed to any additional deduction off of the amount Myers owed Vintage. Myers nonetheless deducted the $4,310 from the remaining amount owed to Vintage, in addition to refusing to pay for the pallet of Bighorn stone that cost $2,973.

¶7     In their First Amended Answer and Counterclaims, Myers complained about the quality of Sisson's masonry stonework on the exterior walls of the home. Myers alleged, in part, that Sisson failed to properly seal the masonry/stonework, incorrectly installed stone, caused other damages by the staining that resulted from unsealed rock, and necessitated the hiring of another stonemason after walking off the job. Myers failed to

6

comply with the disclosure requirements in the case scheduling order issued by the District Court, prompting the court to rule that testimony from their expert witnesses would be excluded or limited at trial. Myers had the option of amending their pleadings to cure these deficiencies, but did not seek to amend their pleadings until the first day of trial. On November 24, 2015, the District Court issued an Opinion and Order excluding and limiting the proposed testimony of Myers' expert witnesses. The court had also scheduled a preliminary pretrial conference on March 17, 2016, which directed the parties to bring exhibit lists, exhibit books, witness lists, and proposed findings and conclusions to the conference. Vintage complied, but Myers did not. The court gave Myers until March 21 to comply, but Myers missed this deadline also. The court disallowed the use at trial of any untimely disclosed opinions, which encompassed testimony Myers had planned to use regarding remediation costs and expert testimony with respect to whether Vintage and Sisson performed in a workmanlike manner.

¶8     Dr. Feighner alleged that the $30,000 paid to Sisson Stone was an overpayment, considering the poor quality of Sisson's work. Myers, however, presented no evidence of the amount overpaid. At trial, the District Court allowed Myers to introduce photographs taken by Myers' expert that showed flaking stones, rust stains running across stones and the driveway, and spaces between stones that required grouting. The court permitted Myers' expert to testify only to facts she observed, but not provide any opinion testimony. Myers' final witness was an established concrete contractor with an excellent reputation who was called to testify about the cost of repairing concrete in the driveway that had been

7

stained by rust leeching from improperly installed masonry stones. Myers had failed to disclose this expert witness's testimony for nine months, until 5 p.m. the night before the pretrial conference on March 17th. The court thus excluded this witness's testimony after Vintage objected. After the witness testified and Vintage's objection was sustained, the court explained the consequences of Myers' procedural errors and omissions overall:

> [B]ecause of your either delayed disclosures, extremely delayed disclosure that I found to be prejudicial, or non-disclosures at all of a lot of your monetary amounts for damages, you're not able to prove them. . . . And you, through your own actions, have caused the damage part, or inactions, to be excluded. So even though I can see that there's something wrong, there's no monetary amount to attach to it.

The District Court concluded that Myers had failed to meet the burden of proof relating to their counterclaims because Myers had presented no direct causal evidence, or even an offer of proof regarding Sisson's unsatisfactory work. Although the court ultimately inferred cause, the court also found that Myers had presented no evidence regarding specific damage amounts; no offer of proof of damages; and no evidence to support the costs of remediation or repair to the home. The court reasoned that the "complete absence of any evidence of damages defeats Myers' counterclaims[.]"

¶9 Although the District Court found that Vintage had properly filed and perfected its construction lien pursuant to § 71-3-521, et seq., MCA, it did not permit Vintage to foreclose on the lien. The court determined that, under the statute, Vintage was required to show (1) the work was satisfactorily completed; and (2) Myers failed to pay for the work. Since the court had found the exterior masonry work by Sisson was unsatisfactory, the

8

court concluded there was insufficient evidence to support a judgment in favor of Vintage for the foreclosure of the construction lien. Consequently, the court did not permit Vintage to recover attorney's fees as it would have been otherwise entitled to do under § 71-3-124, MCA.

¶10 The District Court did award contract damages to Vintage, however. The court awarded Vintage a total of $8,317, stemming from three areas: (1) the contractor's fee owed on Leonardi's roadwork, which amounted to $1,034 (10% of $10,340); (2) the $4,310 impermissibly withheld by Myers stemming from the payment to Buck Brawley; and (3) the $2,973 that Myers owed for the pallet of Bighorn stone Brawley had installed.[2] The court reasoned that Leonardi's $40,888 bid for roadwork was part of the original estimate underlying the agreement between Myers and Vintage. Myers had paid Vintage the 10% contractor's fee on the $32,712 expended from this category to fund the snake fence, and had never executed a release from Vintage regarding Leonardi's work. Myers thus owed the 10% contractor's fee on the remaining $9,000 estimated as well, which ended up as $10,340 in actual costs paid to Leonardi.

¶11 The rationale for the remaining damages stemmed from the fact that Vintage never agreed to a deduction of $4,310 from the amount Myers owed. Both parties knew in September of 2013 that Vintage projected $24,000 as the cost of completing the masonry and stonework and that the $15,300 completion estimate from Sisson was too low to fully

---

[2] Vintage's Entry of Judgment and Myers' brief reference the total damages awarded as $8,309. Yet, this Court's math calculates 1,034 + 4,310 + 2,973 to equal 8,317.

complete it. Myers had agreed from the outset to pay the costs of completing the construction of their home and never secured a release for this obligation from Vintage. Vintage had only released Myers from the 10% contractor's fee for the cost to complete the exterior masonry. The payment to Brawley for $4,310 fell within the $24,000 range of the completion estimate Vintage had provided in September of 2013. The court determined that Myers was therefore not entitled to deduct Brawley's payment from other amounts owed to Vintage. Vintage, the court concluded, was thus owed the $4,310 Myers had withheld. The court employed the same rationale to determine that Myers owed Vintage $2,973 for the Bighorn stone pallet, concluding the stone had been paid for by Vintage, incorporated into the project, and never released from the amount Myers owed.

¶12 Myers appealed to this Court, arguing that the District Court erred by awarding damages to Vintage,[3] and that the court erred by not awarding Myers attorney's fees when Vintage failed to prove its lien. Vintage argues the District Court considered sufficient evidence to merit its award for damages, but that the court erred as a matter of law when it did not permit foreclosure of the lien and award Vintage attorney's fees pursuant to Montana's lien foreclosure statutes.

---

[3] Myers' brief crafts the issue statements as whether the trial court erred by awarding damages to Vintage *and* not awarding damages to Myers on their counterclaim. But Myers presented no argument or authority in the body of the brief to support a contention that the District Court's denial of damages for their counterclaim merited consideration on appeal. This Court is not obliged to develop analysis, surmise a position, or conduct research to support a party's contentions. *Johnston v. Palmer*, 2007 MT 99, ¶ 30, 337 Mont. 101, 158 P.3d 998. We therefore consider here only whether Vintage was entitled to its award of damages.

**STANDARD OF REVIEW**

¶13 We review a district court's interpretation of a statute de novo, to determine whether the court's interpretation is correct. *dck Worldwide Holdings v. CH SP Acquisition, LLC*, 2015 MT 225, ¶ 15, 380 Mont. 215, 355 P.3d 724.

¶14 We review an award of damages to determine whether the trial court abused its discretion. A district court's determination of damages is a factual finding that must be upheld if it is supported by substantial evidence. We will not overturn a district court's award of damages unless it is clearly erroneous. A district court's factual findings are clearly erroneous if they are not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with a definite and firm conviction that a mistake was made. When determining whether substantial evidence supports the district court's findings, we will review the evidence in the light most favorable to the prevailing party. *Mt. W. Bank, N.A. v. Cherrad, LLC*, 2013 MT 99, ¶¶ 26-27, 369 Mont. 492, 301 P.3d 796. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Substantial evidence is greater than a mere scintilla of evidence, but may be less than a preponderance. *Johnston v. Palmer*, 2007 MT 99, ¶ 26, 337 Mont. 101, 158 P.3d 998.

¶15 A district court is in the best position to judge the credibility of testimony and proffered evidence. We will defer to a district court's resolution of conflicting evidence if the evidence sufficiently supports a factual finding, even where evidence in the record supports a contrary finding. *Cherrad, LLC*, ¶ 38.

11

**DISCUSSION**

¶16    *1. Whether there was substantial evidence to support the District Court's award of damages to Vintage.*

¶17    We discern Myers' argument regarding damages awarded to Vintage to be that there was insufficient evidence to support the District Court's finding that the contract between Myers and Vintage encompassed Leonardi's driveway work, and that there was insufficient evidence for the court to find that Vintage was entitled to the $4,310 that Myers deducted from the balance owed. Lastly, Myers argues that the purchase of "the extra stone," which we interpret to be the pallet of Bighorn stone, was "beyond the agreement that was accepted[.]"

¶18    A contract is enforceable when there are identifiable parties capable of contracting, a lawful object, consideration, and consent. Section 28-2-102, MCA; *Hayes v. Hartelius*, 215 Mont. 391, 396, 697 P.2d 1349, 1352-53 (1985). Consent can be communicated "by some act or omission of the party contracting by which he intends to communicate it or which necessarily tends to such communication." *Hayes*, 215 Mont. at 395, 697 P.2d at 1352 (quoting § 28-2-501(1), MCA). Here, Vintage and Myers are identifiable parties with the capacity to contract. Construction of a home is a lawful object of a contract. The District Court found that Vintage and Myers had a contract reduced to writing in the form of Vintage's written estimate for $398,880.46, albeit missing some important terms. This estimate established the basis of the contract between the parties, formulating as terms the categories of construction and the approximate costs entailed through completion. The

12

record reflects that paying for those approximate costs formed the basis of Myers' obligation, while the completion of the home was Vintage's. There was thus sufficient consideration between them. We infer the parties' consent to contract from the record, which shows that Vintage commenced the work contemplated and received payments from Myers without dispute until September of 2013. Although the 10% contractor's fee was premised upon an oral agreement, a written contract may be modified by an executed oral agreement. Section 28-2-1602, MCA; *AAA Constr. of Missoula, LLC v. Choice Land Corp.*, 2011 MT 262, ¶ 27, 362 Mont. 264, 264 P.3d 709. Since Myers paid the 10% contractor's fee on portions of the contract, like the snake fence, there was sufficient evidence for the District Court to find the 10% fee was a valid term sufficiently executed and applicable to the contract as a whole.

¶19 We therefore must determine whether there was sufficient evidence for the District Court to find the contractor's fee term applied to Leonardi's driveway work. We conclude there was. The driveway work was included in the original estimate, which the parties had agreed would overall be subject to the payment of the contractor's fee. Further, when funds were required for the snake fence and abatement measures, those funds were drawn from the driveway budget. Myers paid the contractor's fee on the funds taken from the driveway budget pool that were used for the snake fence and abatement. On that basis, which we find to be more than a mere scintilla of evidence, the District Court reasonably concluded that Myers had also agreed to pay the contractor's fee on the funds remaining from the same pool that was slated for driveway work. Myers argues that Leonardi's testimony at

trial controverts such a conclusion, but the District Court was in the best position to judge the evidence and weigh credibility. Since there was sufficient evidence to support the court's finding, Leonardi's conflicting testimony alone does not serve to upend that finding on appeal. Vintage is thus entitled to retain the District Court's award of damages in the amount of $1,034—10% of the $10,340 paid to Leonardi for his work on the driveway.

¶20     The District Court entertained similarly sufficient evidence to conclude that Myers was not entitled to withhold $4,310 from the amount owed to Vintage, and was obligated to pay for the pallet of Bighorn stone used in the home. The court, after hearing witnesses and reviewing exhibits, concluded that Vintage never agreed to a $4,310 deduction from the amount Myers owed under the contract. Myers, the court found, had agreed from the outset to pay Vintage the costs of completing the construction of their home. Vintage never released Myers from this agreement. Vintage had only agreed to release Myers from the payment of the 10% contractor's fee for the masonry work, not the cost of the work itself. The District Court found that Myers never provided any legal rationale at trial to support such a deduction. On appeal, Myers argues Vintage breached the contract, causing Myers damages that Myers should have been permitted to deduct from the amount owed to Vintage. The District Court was in the best position to weigh the evidence and testimony, however, and find that Myers was not entitled under the contract to unilaterally deduct from the balance owed without Vintage's consent. Yet, there was sufficient evidence for the court to find that both parties knew in September of 2013 that the remaining masonry work would cost approximately $24,000, not $15,000. Indeed, the evidence showed that

Banks had informed Myers that Sisson's bid was too low to complete the project, and that Myers might be obligated to pay upwards of an additional $9,000. Myers' statement that "we'll see how it falls out," which prefaced his directing Banks to accept the flawed bid, provided sufficient evidence for the District Court to conclude that Myers was aware he could be obliged to pay more—up to $9,000 more, as Banks had warned—to complete the masonry work, and thus was not entitled to a deduction from the amount he owed Vintage under the contract. We do not find the court clearly erred by reasoning so. Additionally, the evidence at trial sufficiently supported the District Court's conclusion that Myers was obligated to pay Vintage for the pallet of Bighorn stone Brawley used to complete the masonry work. The court did not clearly err by finding these stones were used as part of the materials purchased to complete the masonry work, and that Myers was therefore obligated to pay Vintage $2,973 for them.

¶21    *2. Whether the District Court erred as a matter of law by denying Vintage an award of attorney's fees and the right to foreclose upon its lien.*

¶22    Although the District Court determined Vintage's lien was valid, the court reasoned in its Findings of Fact, Conclusions of Law and Order that Vintage was not entitled to a favorable judgment for the foreclosure of the construction lien because the masonry and stonework by Sisson was unsatisfactory to Myers. The District Court therefore denied Vintage recovery of its attorney's fees. On appeal, Vintage argues the court erred by not foreclosing the lien and awarding the attorney's fees because the statutory standard for foreclosure of a construction lien is not whether the work is satisfactory, but whether the

work was completed or substantially completed. Vintage offers § 71-3-535(4), MCA, *Johnston* and *dck Worldwide* as legal authority to support its argument. We agree with Vintage.

¶23 Construction liens protect the equitable interests of those who increase the value of property through their labor or materials. *dck Worldwide*, ¶ 25 (citing 56 C.J.S. *Mechanics' Liens* § 3 (2007)). To create a construction lien, a lien claimant must substantially furnish services or materials pursuant to a real estate improvement contract prior to filing the lien notice. Section 71-3-535(4), MCA. It is "the use of the materials furnished and the work and labor expended by the contractor [that] gives the material man and laborer his lien under the statute." *dck Worldwide*, ¶ 25 (quoting *Van Stone v. Stillwell & Bierce Mfg. Co.*, 142 U.S. 128, 136, 12 S.Ct. 181, 183 (1891)). A construction lien therefore arises upon completion or substantial completion of the contracted work. *Gwynn v. Cummins*, 2006 MT 239, ¶ 17, 333 Mont. 522, 144 P.3d 82. Liens are thus generally limited to services actually performed and materials actually supplied. Lienable materials are those that are supplied "with the intent that they be used in the course of construction of or incorporated into the improvement[;]" and that are actually "incorporated in the improvement or consumed as normal wastage in construction operations[.]" Section 71-3-524, MCA; *dck Worldwide*, ¶ 23. A presumption that materials were incorporated arises when the materials are delivered to the site of the improvement. *LHC, Inc. v. Alvarez*, 2007 MT 123, ¶ 24, 337 Mont. 294, 160 P.3d 502. Montana's lien statutes do not authorize liens for the total amount of a construction contract, but rather for the amount of contractual services and

16

materials left unpaid, subject to § 71-3-524, MCA. *dck Worldwide*, ¶¶ 22-23; § 71-3-526, MCA. Although we strictly construe the procedural requirements of the construction lien statutes, we liberally construe the statutes so as to give effect to their remedial purpose. *Johnston*, ¶ 40.

¶24 A district court "shall allow as costs the money paid and attorney fees incurred for filing and recording the lien and reasonable attorney fees in the district and supreme courts. The costs and attorney fees must be allowed to each claimant whose lien is established[.]" *Lewistown Miller Constr. Co. v. Martin*, 2011 MT 325, ¶ 30, 363 Mont. 208, 271 P.3d 48 (quoting § 71-3-124(1), MCA). A district court is not empowered with discretion to determine whether a party with an established lien is entitled to attorney's fees—the language of the statute is mandatory. A district court errs if it fails to award attorney's fees to a party with an established lien. *Lewistown Miller*, ¶ 30. Section 71-3-124, MCA, does not require the award of attorney's fees to be reduced if the judgment is for an amount less than what was claimed in the lien. *LHC, Inc.*, ¶ 35.

¶25 Although the District Court disallowed Vintage to foreclose on the lien and recover its attorney's fees, the court did so on the basis of Myers' dissatisfaction with the work performed. This basis of judgment was in error, however, as the equitable principles underlying the lien statutes would be undermined if owners could avoid foreclosure of a construction lien by simply expressing their dissatisfaction with a contractor's work performed. The rule instead, which we articulated in *Cummins*, is that work completed or substantially completed, in addition to lienable materials, establishes the lien. Here,

Vintage contended it was entitled to foreclose its lien for $14,174.25 in unpaid construction contract work and materials. The District Court found that Vintage was in fact entitled to recover $8,317. The record sufficiently establishes that this amount was for work Vintage completed or substantially completed, and for materials that were incorporated into the property. The District Court found that Leonardi completed the driveway work and that Vintage was entitled to 10% of the amount paid to him as a contractor's fee. The court concluded that the masonry and stonework was completed, and that the Bighorn stone pallet had been actually incorporated into the project. Myers' complaints about the quality of work possibly entitled them to other avenues of recovery that they did not adequately pursue at trial, but the complaints do not abrogate Vintage's right to foreclose the lien. Further, in no way could Myers' complaints about the quality of work performed undermine the lien or amount owed on the pallet of stone Brawley used to complete the masonry work. Regardless of any complaints or deficiencies in other areas, the pallet of Bighorn stone, personally selected by Myers, was intended to be incorporated into the site. The District Court found that Brawley installed it as intended. Vintage's lien concerning the stone therefore clearly complied with the statutory requirements of § 71-3-524, MCA. The District Court consequently erred as a matter of law when it reasoned that Myers' dissatisfaction with the completed work would abrogate Vintage's right to collect attorney's fees for its valid lien.

**CONCLUSION**

¶26     The judgment of the District Court awarding Vintage $8,317 in contractual damages and denying Myers recovery on their counterclaims is affirmed.  The judgment of the District Court denying Vintage its attorney's fees pursuant to § 71-3-124, MCA, is reversed and remanded for proceedings consistent with this opinion.


/S/ LAURIE McKINNON


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR